(875 P.2d 289)
No. 70,519
No. 70,520
No. 70,521

CHARLES PHILLPOT, *Appellant,* v. JAY SHELTON, Warden of the
Norton Correctional Facility, *Appellee.*
Petition for review denied 255 Kan. 1003 (1994).

Opinion filed June 3, 1994.

*Kevin G. Campbell*, of Legal Services for Prisoners, Inc., for the appellants.

*Robert Wasinger*, legal counsel, Department of Corrections, for the appellee.

Before BRISCOE, C.J., BRAZIL and LARSON, JJ.

BRISCOE, C.J.: Eleven prisoners or former prisoners appeal district court orders requiring each to serve a period of postrelease supervision following their release from incarceration. The orders appealed were entered in three separate cases and have been consolidated for appeal.

All of the appellants were sentenced under sentencing statutes in effect prior to the passage of the Kansas Sentencing Guidelines Act, K.S.A. 1993 Supp. 21-4701 *et seq.* After the Guidelines became effective on July 1, 1993, the Kansas Department of Corrections provided reports on each of the appellants pursuant to K.S.A. 1993 Supp. 21-4724(c) and recommended that the Guidelines be applied retroactively to each appellant. Each report included the individual's original indeterminate sentence, the amount of that sentence served, the converted sentence under the Guidelines, and the severity of the crimes involved. This information is summarized below:

| Name/Case No.: | Original Sentence: | Time Served: | Sentence under Guidelines: | Severity: |
|---|---|---|---|---|
| Charles Phillpot (No. 70,519) | 4-12 years (commencing 7/84) | 8 years, 11 months, 19 days | 16 months (less possible good time) | 9 |
| Thomas L. Cooley (No. 70,520) | 1-5 years (commencing 1/92) | 1 year, 6 months, 5 days | 6 months (less possible good time) | 10 |
| Kenneth W. Bayliff (No. 70,521) | 1-2 years (commencing 8/91) | 1 year, 11 months, 3 days | 8 months (less possible good time) | 9 |
| John C. Bishop, Jr. (No. 70,521) | 2-9 years (commencing 12/85) | 7 years, 7 months, 4 days | 18 months (less possible good time) | 9 |
| Harold D. Delonia (No. 70,521) | 2-10 years (commencing 9/85) | 7 years, 10 months, 5 days | 14 months (less possible good time) | 9 |
| James E. Loftis (No. 70,521) | 1-5 years (commencing 8/89) | 3 years, 10 months, 26 days | 6 months (less possible good time) | 9 |
| William R. McGinnis (No. 70,521) | 1-5 years (commencing 7/91) | 1 year, 11 months, 29 days | 7 months (less possible good time) | 9 |
| Fernando V. Perez (No. 70,521) | 1-5 years (commencing 3/90) | 3 years, 4 months, 6 days | 9 months (less possible good time) | 9 |
| Joseph Petrin (No. 70,521) | 2-5 years (commencing 2/91) | 2 years, 5 months, 7 days | 18 months (less possible good time) | 9 |
| Delbert E. Trout, Jr. (No. 70,521) | 4-20 years (commencing 7/86) | 7 years, 9 days | 32 months (less possible good time) | 7 |
| Larry D. Wilson, Jr. (No. 70,521) | 6-22 years (commencing 10/87) | 5 years, 8 months, 22 days | 12 months (less possible good time) | 9 |

This information regarding each appellant and the retroactive application of the Guidelines to each appellant is not disputed by the parties.

As all of the appellants were convicted of nondrug severity level 7 through 10 crimes that were not sexually violent or motivated, the length of each appellant's postrelease supervision is 12 months, plus the amount of good time earned and retained. K.S.A. 1993 Supp. 22-3717(d)(1)(B). Therefore, at the time of the Department's report, all of the appellants, except Petrin, had been incarcerated for a period that exceeded the combined applicable periods of incarceration and postrelease supervision required under the Guidelines. When each appellant's sentence was converted under the Guidelines, the Department determined each appellant remained subject to postrelease supervision upon release from prison.

Appellants filed the present actions, contending the period of incarceration each has served in excess of the period of incarceration required under the Guidelines should be credited against the period of postrelease supervision required under the Guidelines. Appellee Jay Shelton, warden of the Norton Correctional Facility, argued the Guidelines should be interpreted to require all prisoners to serve a period of postrelease supervision upon release from incarceration. The district court agreed with appellee and held each appellant was required to serve the applicable period of postrelease supervision. Appellants appeal these orders.

The issue presented is whether, in cases where the Guidelines are retroactively applied, the period of incarceration served by a prisoner on an indeterminate sentence can be applied to satisfy the period of postrelease supervision required by the Guidelines when the prisoner's period of incarceration served is in excess of the period of incarceration required under the Guidelines.

Our resolution of this issue will require this court to interpret the applicable provisions of the Guidelines. Questions of statutory interpretation are questions of law. When determining questions of law, this court is not bound by the decision of the district court. *State v. Donlay*, 253 Kan. 132, 133-34, 853 P.2d 680 (1993). We are guided in our statutory analysis by the following:

"The power to prescribe the penalty to be imposed for the commission of a crime rests exclusively with the legislature, not the courts. The power of the legislature to specify the punishment for a crime is controlled only by the Constitutions of the United States and the State of Kansas." *State v. Keeley,* 236 Kan. 555, 560, 694 P.2d 422 (1985).

"We have stated that the fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute. In determining legislative intent, courts are not limited to a mere consideration of the language employed but may properly look to the historical background of the enactment, the circumstances attending its passage, the purposes to be accomplished and the effect the statute may have under the various constructions suggested. [Citations omitted.]" *State v. Thompson,* 237 Kan. 562, 563, 701 P.2d 694 (1985).

"Penal statutes must be strictly construed in favor of the persons sought to be subject to them. The rule of strict construction simply means ordinary words are to be given their ordinary meaning. The statute should not be read to add that which is not readily found therein or to read out what, as a matter of ordinary English language, is contained therein. A statute should never be given a construction that leads to uncertainty, injustice or confusion, if it is possible to construe it otherwise. In construing a statute, words and phrases should be construed according to the context, and the approved usage of the language and words in common use are to be given their natural and ordinary meaning. [Citation omitted.]" *Thompson,* 237 Kan. at 566.

## Postrelease supervision is defined in the Guidelines:

" '[P]ostrelease supervision' means the release of a prisoner to the community after having served a period of imprisonment or equivalent time served in a facility where credit for time served is awarded as set forth by the court, subject to conditions imposed by the Kansas parole board and to the secretary of corrections' supervision." K.S.A. 1993 Supp. 21-4703(q).

"Every inmate while on postrelease supervision shall remain in the legal custody of the secretary of corrections and is subject to the orders of the secretary." K.S.A. 1993 Supp. 22-3717(i). By statute, in presumptive imprisonment cases, postrelease supervision is automatically included as a part of a defendant's sentence under the Guidelines:

"(2) In presumptive imprisonment cases, the sentencing court shall pronounce the complete sentence which shall include the prison sentence, the maximum potential reduction to such sentence as a result of good time and the period of postrelease supervision at the sentencing hearing. Failure to pronounce the period of postrelease supervision shall not negate the existence of such period of postrelease supervision.

"(3) In presumptive nonprison cases, the sentencing court shall pronounce the prison sentence as well as the duration of the nonprison sanction at the sentencing hearing." K.S.A. 1993 Supp. 21-4704(e).

See similarly K.S.A. 1993 Supp. 21-4705(d)(2), (3) (drug crimes).

As seen from the following provisions, the length of postrelease supervision depends upon the severity of the defendant's highest severity level offense, plus any good time earned and subtracted from the defendant's presumptive sentence:

"(d)(1) Persons sentenced for crimes committed on or after July 1, 1993, will not be eligible for parole, but will be released to a mandatory period of postrelease supervision upon completion of the prison portion of their sentence as follows:

. . .

(D) in cases where sentences for crimes from more than one severity level have been imposed, the highest severity level offense will dictate the period of postrelease supervision. Supervision periods will not aggregate.

. . .

"(r) Inmates shall be released on postrelease supervision upon the termination of the prison portion of their sentence. Time served while on postrelease supervision will vest." K.S.A. 1993 Supp. 22-3717.

"(1) When the sentencing judge imposes multiple sentences consecutively, the consecutive sentences shall consist of an imprisonment term and a supervision term. The postrelease supervision term will be based on the primary crime.

. . . .

"(4) The total sentence assigned for a current conviction event cannot exceed twice the base sentence. The postrelease supervision term will reflect only the primary crime. Supervision periods will not be doubled." K.S.A. 1993 Supp. 21-4720(b).

"Any time which is earned and subtracted from any presumptive sentence of any inmate pursuant to good time calculation shall be added to such inmate's time of postrelease supervision." K.S.A. 1993 Supp. 21-4722(b).

"(a) At any time during release on parole, conditional release or postrelease supervision, the secretary of corrections may issue a warrant for the arrest of a released inmate for violation of any of the conditions of release, or a notice to appear to answer to a charge of violation. . . .

"(b) . . . Revocations of release of inmates who are on a specified period of postrelease supervision for a crime committed on or after July 1, 1993, shall not exceed a 90-day period of confinement from the date of the revocation hearing before the board, if the violation does not result from a conviction for a new felony or misdemeanor." K.S.A. 1993 Supp. 75-5217.

"The period served on parole or conditional release shall be deemed service of the term of confinement, and, subject to the provisions contained in K.S.A. 75-5217 and amendments thereto relating to an inmate who is a fugitive from or has fled from justice, the total time served may not exceed the maximum term or sentence. The period served on postrelease supervision shall vest in and be subject to the provisions contained in K.S.A. 75-5217 and amendments thereto relating to an inmate who is a fugitive from or has fled from justice. The total time served shall not exceed the postrelease supervision period established at sentencing.

"When an inmate on parole or conditional release has performed the obligations of the release for such time as shall satisfy the Kansas parole board that final release is not incompatible with the best interest of society and the welfare of the individual, the parole board may make a final order of discharge and issue a certificate of discharge to the inmate but no such order of discharge shall be made in any case within a period of less than one year after the date of release except where the sentence expires earlier thereto." K.S.A. 1993 Supp. 22-3722.

As appellants note, when a defendant is sentenced under the Guidelines, barring subsequent convictions or flight from justice, that defendant knows the total time he or she will be subject to imprisonment and postrelease supervision.

The retroactivity of the Guidelines is provided for in K.S.A. 1993 Supp. 21-4724, which provides in part:

"(a) The sentencing grid for nondrug crimes as provided in K.S.A. 1993 Supp. 21-4704 and the sentencing grid for drug crimes as provided in K.S.A. 1993 Supp. 21-4705 shall be applied for crimes committed before July 1, 1993, as provided in this section.

"(b)(1) Except as provided in subsection (d), persons who committed crimes which would be classified in a presumptive nonimprisonment grid block on either sentencing grid, in grid blocks 5-H, 5-I or 6-G of the nondrug grid or in grid blocks 3-H or 3-I of the drug grid, pursuant to the provisions of subsection (c) of K.S.A. 1993 Supp. 21-4705 and amendments thereto, if sentenced pursuant to the Kansas sentencing guidelines act, and were sentenced prior to July 1, 1993, shall have their sentences modified according to the provisions specified in the Kansas sentencing guidelines act.

(2) Except as provided in subsection (d), offenders on probation, assignment to community corrections, conditional release or parole for crimes classified in subsection (b)(1) committed prior to July 1, 1993, who have such probation, assignment to community corrections, conditional release or parole revoked shall have their sentences modified according to the provisions specified in the Kansas sentencing guidelines act.

"(c)(1) Except as provided in subsection (f) the department of corrections shall conduct a review of all persons who committed crimes and were sentenced prior to July 1, 1993, and are imprisoned in the custody of the

secretary of corrections as of that date. The department shall prepare a sentencing guidelines report on all such imprisoned inmates except those who have convictions for crimes which, if committed on or after July 1, 1993, would constitute a severity level 1, 2, 3 or 4 felony on the sentencing guidelines grid for nondrug crimes or a severity level 1, 2 or 3 felony on the sentencing guidelines grid for drug crimes, but, including those in grid blocks 3-H or 3-I of the drug grid, pursuant to the provisions of subsection (c) of K.S.A. 1993 Supp. 21-4705 and amendments thereto, which shall review and determine what the person's sentence as provided by the crime severity and criminal history grid matrix established by the Kansas sentencing commission guidelines act would be as if the crime were committed on or after July 1, 1993. A copy of the report shall be transmitted to the inmate, the county or district attorney for the county from which the inmate was sentenced, and the sentencing court.

. . . .

"(e) If a sentence is converted as provided by this section, then all the rights and privileges accorded by the Kansas sentencing guidelines act shall be applicable. A person's sentence shall not be increased in length through a conversion to one under sentencing guidelines."

Appellants argue the time they have spent in prison under the prior sentencing statutes should apply to satisfy both the incarceration and postrelease supervision requirements of the Guidelines. They contend this court must address their present circumstances as if their sentences were initially imposed under the Guidelines. For support of this perspective, they rely on the retroactivity statute which requires that they be accorded all rights and privileges of the Guidelines. See 21-4724(e). Applying this perspective, they argue that if they had originally been sentenced under the Guidelines they would have known exactly how long they would be under the supervision of the Department, including time spent on postrelease supervision. When one considers the time they have actually spent in prison, appellants argue they have also served their terms of postrelease. They argue postrelease supervision terms may be served in prison, in the event of revocation, as well as out of prison. See 75-5217(b). They argue that requiring them to serve additional time on postrelease supervision *extends* their sentences, which is an additional punishment not provided for in the Guidelines. Absent such a provision, appellants argue the extensions of their sentences cannot legally be imposed. See *State v. McNaught*, 238 Kan. 567, 587, 713 P.2d 457 (1986). In support of these arguments, appellants

rely upon the requirement that postrelease supervision begins after completion of the prison portion of their crimes. See 22-3717(r). Because under the Guidelines they would have completed their required term of imprisonment over a year ago, appellants argue they have already served the postrelease portion of the sentences as well. ·

Appellants rely on *State v. Snook*, 1 Kan. App. 2d 607, 571 P.2d 78 (1977), and *North Carolina v. Pearce*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969), *overruled in Alabama v. Smith*, 490 U.S. 794, 104 L. Ed. 2d 865, 109 S. Ct. 2201 (1989), to support their position. In *Snook*, the defendant argued time spent on probation must be credited to his sentence. After considering K.S.A. 22-3716(2) and other applicable statutes and applying the maxim *expressio unius est exclusio alterius* (the mention or inclusion of one thing implies the exclusion of another), the court concluded the legislature intended not to credit a defendant's sentence for time served on probation. The defendant in *Snook* also argued the constitutional prohibition against double jeopardy required that credit be given for time spent on probation, relying on *Pearce*. This court distinguished *Pearce:*

"*Pearce* did not involve the imposition of a single scheme of rehabilitation relating to the same conviction, but rather a resentencing upon reconviction after the original conviction had been set aside and a new trial ordered. *Imprisonment clearly is punishment and time served on a prior conviction for the same offense must be credited toward fulfillment of the sentence.* As the Kansas Supreme Court has indicated, however, probation represents a grace period during which the defendant has the opportunity to demonstrate that rehabilitation can be achieved without incarceration." (Emphasis added.) 1 Kan. App. 2d at 608-09.

This court in *Snook* concluded credit was not warranted as the defendant had not been subject to confinement while on probation. 1 Kan. App. 2d at 609.

Appellants employ the language emphasized above to argue the time they have already served should apply toward their new sentences. They also compare the facts of this case to those in *Pearce*. As can be discerned in part from the language quoted above, *Pearce* concerned a situation where a defendant's conviction was reversed after he had served several years in prison. He was retried and sentenced to a period "which, when added

to the time Pearce had already spent in prison, the parties agree amounted to a longer total sentence than that originally imposed." 395 U.S. at 713. The Court found Pearce was constitutionally guaranteed credit for the time he had already served. 395 U.S. at 718. It also stated "the same principle obviously holds true whenever punishment already endured is not fully subtracted from any new sentence imposed." 395 U.S. at 718. The question then considered was whether, upon resentencing, a longer sentence could be imposed. The Court concluded that, before a longer sentence could be imposed, it must be made clear that the sentence was not a result of vindictiveness against the defendant for having successfully attacked his first conviction. 395 U.S. at 725-26. This portion of the *Pearce* decision has been tempered by later decisions to the extent that it was overruled in *Alabama v. Smith*, 490 U.S. at 794.

In response to appellants' arguments, appellee argues *Pearce* is factually distinguishable and therefore inapplicable. Appellee emphasizes the fact that appellants have not been resentenced to more severe sentences. Instead, by application of the Guidelines, all of the appellants' sentences have been reduced. Appellee also argues that under the Guidelines the imprisonment portion of a sentence is distinct from the postrelease portion. Appellee notes that the court has some discretion when considering the former, but no discretion to alter the latter. Compare 21-4704(e)(1) and 21-4705(d)(1) with 21-4704(e)(2), 21-4705(d)(2), and 22-3717(d). Further, the postrelease portion is automatically included in a presumptive imprisonment sentence. See 21-4704(e)(2) and 21-4705(d)(2). Appellee also argues, by implementing postrelease supervision and eliminating parole, the legislature clearly intended that prisoners be subjected to some community supervision upon their release from incarceration. He argues the new system, which only allows revocations in the amount of 90 days, exemplifies the legislature's intent that inmates be reintegrated into society through a supervised program.

We agree that *Pearce* does not control the question presented in this case. Here, we are considering the conversion of a valid sentence under one statutory framework into a valid sentence under an entirely different statutory framework. The net result of that conversion is shorter sentences for all of the appellants.

No one is advocating that appellants should not be given credit for time served as applied to the terms of incarceration required under the Guidelines but, from *Pearce*, it does not follow that time served under an indeterminate sentence should necessarily be applied to the Guidelines' postrelease supervision requirement.

A reading of the statutes indicates that, under the Guidelines, a defendant is to serve a bifurcated sentence—incarceration followed by postrelease supervision. See 21-4704(e) and 21-4705(d). In addition, other than the interplay of good time credit, these two parts are effectively independent from one another. See 21-4704(e), 21-4705(d), 21-4720(b), 22-3717, and 75-5217(a) and (b). Further, the statutes indicate postrelease time is mandatory and comes after a defendant has been released from incarceration. See 22-3717(d)(1) and (r). Because appellants have served only a period of incarceration under their indeterminate sentences, they are subject to postrelease supervision upon their release from incarceration.

Affirmed.