(932 P.2d 448)

No. 76,613

Melvin White, *Appellee*, v. Louis E. Bruce, Warden of the Ellsworth Correctional Facility, *Appellant*.

Opinion filed February 7, 1997.

*Robert E. Wasinger*, of Department of Corrections, of Ellsworth, for appellant.

*Kevin G. Campbell*, of Legal Services for Prisoners, Inc., of Norton, for appellee.

Before BRAZIL, C.J., ELLIOTT and PIERRON, JJ.

BRAZIL, C.J.: Louis E. Bruce, the Warden of the Ellsworth Correctional Facility (ECF), appeals the district court's decision to grant habeas corpus relief to petitioner Melvin White. The court held that White should receive credit against his postrelease supervision for time he spent incarcerated on another charge prior to the Kansas Parole's Board's (KPB) decision to revoke his postrelease supervision. The court stayed execution of its judgment pending the outcome of this appeal. We reverse.

On January 7, 1994, White finished serving a 42-month guidelines sentence and was released to begin serving 24 months of postrelease supervision. While on postrelease supervision, White committed another offense and was sentenced to 12 months' imprisonment. Because White had been in custody since January 28, 1995, the court granted him 182 days of jail time credit against his

12-month sentence. With the jail time credit, White actually began serving his sentence on January 28, 1995.

On September 27, 1995, the KPB revoked White's postrelease supervision and ordered him to serve to the maximum release date of his postrelease supervision term.

White filed a petition for habeas corpus pursuant to K.S.A. 60-1501, asserting that although he had been incarcerated since January 28, 1995, he was entitled to credit against his postrelease supervision term through September 27, 1995, the date the KPB revoked his postrelease supervision. Following this reasoning, White determined that he had only 3 months and 10 days of postrelease supervision left to serve and that he should be released by May 8, 1996.

The trial court agreed and found that White was entitled to credit against his postrelease supervision term for the time period at issue.

The issue on appeal is whether Kansas law mandates that an individual receive credit against an unrevoked term of postrelease supervision for time spent incarcerated on another charge. The issue involves interpretation of the Kansas Sentencing Guidelines Act and thus poses a question of law over which this court's review is unlimited. See *State v. Gideon*, 257 Kan. 591, 597, 894 P.2d 850 (1995); *State v. Donlay*, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993).

Bruce argues the district court erred in crediting White's postrelease supervision term for the time White was reincarcerated until the date the KPB revoked the postrelease supervision. For that time period, White received credit against both his postrelease supervision term and his new sentence. Bruce contends that the district court's decision violates K.S.A. 21-4608(c), which provides:

"Any person who is convicted and sentenced for a crime committed while on probation, assigned to a community correctional services program, on parole, on conditional release or on postrelease supervision for a felony shall serve the sentence *consecutively* to the term or terms under which the person was on probation, assigned to a community correctional services program or on parole or conditional release." (Emphasis added.)

White acknowledges that K.S.A. 21-4608(c) requires his new sentence to be consecutive to his postrelease supervision term, but

argues that the consecutive sentence provision takes effect only upon the revocation of his postrelease supervision. In support of his contention, White points to K.S.A. 1995 Supp. 75-5217(c), which addresses violations of postrelease supervision:

"If the violation does result from a conviction for a new felony or misdemeanor, upon revocation the inmate shall serve the entire remaining balance of the period of postrelease supervision even if the new conviction did not result in the imposition of a new term of imprisonment."

Under the statute, it is only upon revocation of postrelease supervision that an inmate must serve the remainder of the postrelease supervision term. White reasons that the time prior to revocation vested against his term of postrelease supervision. K.S.A. 22-3717(r) provides:

"Inmates shall be released on postrelease supervision upon the termination of the prison portion of their sentence. Time served while on postrelease supervision will vest."

Similarly, K.S.A. 22-3722 states:

"The period served on postrelease supervision shall vest in and be subject to the provisions contained in K.S.A. 75-5217 and amendments thereto relating to an inmate who is a fugitive from or has fled from justice. The total time served shall not exceed the postrelease supervision period established at sentencing."

White notes that under K.S.A. 22-3722 and K.S.A. 1995 Supp. 75-5217(e) only an inmate who is a fugitive or has fled from justice shall not receive credit for time served on postrelease supervision; in all other instances, the time shall vest. White applies the maxim *expressio unius est exclusio alterius:*

" 'One of the more common rules of statutory interpretation is that expressed in the Latin maxim *expressio unius est exclusio alterius, i.e.,* the mention or inclusion of one thing implies the exclusion of another. This rule may be applied to assist in determining actual legislative intent which is not otherwise manifest, although the maxim should not be employed to override or defeat a clearly contrary legislative intention.' " *State v. Luginbill,* 223 Kan. 15, 20, 574 P.2d 140 (1977).

See *In re J.E.M.,* 20 Kan. App. 2d 596, 600, 890 P.2d 364 (1995).

White argues that the legislature's decision to expressly deny postrelease supervision credit for fugitives indicates that the leg-

islature intended postrelease supervision credit to vest in all other situations, including during incarceration for a different crime.

White's argument rests on the assumption that he remained on postrelease supervision, in spite of his incarceration, until the KPB revoked his postrelease supervision. While Kansas courts have not addressed the precise question of whether an individual can serve an unrevoked term of postrelease supervision while incarcerated, such a proposition seems fundamentally illogical. Kansas law defines postrelease supervision as

"the release of a prisoner to the community after having served a period of imprisonment or equivalent time served in a facility where credit for time served is awarded as set forth by the court, subject to conditions imposed by the Kansas parole board and to the secretary of correction[s'] supervision." K.S.A. 21-4703(p).

Obviously, an individual who has been reincarcerated is no longer released to the community as contemplated by K.S.A. 21-4703(p).

This court has tangentially addressed this issue in two recent decisions: *Phillpot v. Shelton*, 19 Kan. App. 2d 654, 875 P.2d 289, *rev. denied* 255 Kan. 1003 (1994), and *Faulkner v. State*, 22 Kan. App. 2d 80, 911 P.2d 203, *rev. denied* 259 Kan. 927 (1996). In *Phillpot*, the court considered several cases where the sentencing guidelines were retroactively applied and the prisoner's period of incarceration served on an indeterminate sentence was in excess of the period of incarceration required under the guidelines. The court held that the excess period of incarceration served by the prisoner could not be applied to satisfy the period of postrelease supervision required by the guidelines. 19 Kan. App. 2d at 664.

"A reading of the statutes indicates that, under the Kansas Sentencing Guidelines Act, a defendant is to serve a bifurcated sentence—incarceration followed by postrelease supervision. Other than the interplay of good time credit, these two parts are effectively independent from one another. The statutes indicate postrelease time is mandatory and comes after a defendant has been released from incarceration. Because appellants have served only a period of incarceration under their indeterminate sentences, they are subject to postrelease supervision upon their release from incarceration." 19 Kan. App. 2d 654, Syl. ¶ 8.

The *Phillpot* court essentially held that an individual could not receive credit against a term of postrelease supervision for time spent in prison under a pre-guidelines indeterminate sentence.

The basis for the decision is that under the guidelines, incarceration and postrelease supervision are independent from one another. This rationale applies equally to the instant case. Regardless of whether an inmate's incarceration is by virtue of a pre-guidelines indeterminate sentence or a new guidelines determinate sentence, incarceration and postrelease supervision are independent concepts. The *Phillpot* decision supports a conclusion that an inmate cannot logically remain on postrelease supervision if that inmate is incarcerated.

In *Faulkner*, the court held that "time spent on parole under an indeterminate sentence may not be credited to the postrelease supervision period of a converted sentence." 22 Kan. App. 2d at 83. The court based its decision on the fact that time spent on parole is time spent in custody, whereas time spent on postrelease supervision does not begin until after the confinement portion of a sentence has been served. 22 Kan. App. 2d at 82-83. Like *Phillpot*, the *Faulkner* decision supports a conclusion that an inmate cannot be on postrelease supervision while incarcerated. We conclude that incarceration and postrelease supervision are mutually exclusive sentencing concepts which cannot be satisfied at the same time.

Although the parties frame the issue as involving a statutory conflict between sections requiring vested postrelease supervision time and those requiring consecutive sentences, no direct statutory conflict is apparent. K.S.A. 22-3717(r) and 22-3722 mandate that time served while on postrelease supervision shall vest, while K.S.A. 1995 Supp. 75-5217(c) and K.S.A. 21-4608(c) direct that, upon revocation, a postrelease supervision term shall be served consecutive to a new sentence imposed for a crime committed during the supervision period. White seeks refuge in the rule that penal statutes must be strictly construed in favor of the accused. See *State v. Sullivan*, 17 Kan. App. 2d 771, 772, 844 P.2d 741 (1993). However, as the central issue is whether an inmate can serve an unrevoked term of postrelease supervision while incarcerated, the only statute requiring judicial construction is K.S.A. 21-4703(p), which defines postrelease supervision. Although it is a criminal statute, interpretation of K.S.A. 21-4703(p) must be reasonable and sen-

sible to effectuate legislative design and intent. See *State v. Sulli-van*, 17 Kan. App. 2d at 772.

White stresses that because the KPB did not revoke his post-release supervision until 7 months after his reincarceration, that time vested as credit against his postrelease supervision. The district court also cited the KPB's delay in revoking White's postrelease supervision as an equitable factor supporting its decision to grant White credit for the time prior to revocation. On the contrary, it makes sense to us that the KPB should wait to revoke until White has been convicted of a new crime. If White had been found not guilty or the charges otherwise dismissed, we assume that the KPB would not have revoked his postrelease supervision nor raised the question of credit for time incarcerated on those new charges. However, in the present case, the fact that the KPB had not yet revoked White's postrelease supervision does not necessarily mean that White was still serving his term of postrelease supervision.

The United States Supreme Court considered an analogous situation in *Zerbst v. Kidwell*, 304 U.S. 359, 82 L. Ed. 1399, 58 S. Ct. 872 (1938). In *Zerbst*, several inmates were paroled before completing their sentences, and while on parole they committed second offenses for which they were convicted and sentenced. The Court rejected the inmates' contention that they began serving the remainder of their first sentences when they were incarcerated for their second offenses. The Court held:

"When respondent committed a federal crime while on parole, for which he was arrested, convicted, sentenced and imprisoned, not only was his parole violated, but service of his original sentence was interrupted and suspended. Thereafter, his imprisonment was attributable to his second sentence only, and his rights and status as to his first sentence were 'analogous to those of an escaped convict.' Not only had he—by his own conduct—forfeited the privileges granted him by parole, but since he was no longer in either actual or constructive custody under his first sentence, service under the second sentence can not be credited to the first without doing violence to the plain intent and purpose of the statutes providing for a parole system." 304 U.S. at 361.

The Court further held that the inmates' original sentences were suspended until completion of their new sentences and that the Board of Parole retained discretionary authority to revoke parole

until the original sentences were completed. 304 U.S. at 362. See also *Evans v. Hunter*, 162 F.2d 800 (10th Cir. 1947) (following *Zerbst*).

Following the rationale of *Zerbst*, we conclude that White's postrelease supervision was interrupted and suspended by his reincarceration. Thus, although the KPB had not yet revoked his postrelease supervision, White was no longer serving postrelease supervision. Therefore the time spent incarcerated did not vest as credit against his postrelease supervision term. See 22-3717(r); 22-3722.

Finally, White raises a new argument regarding his sentence. White contends that Bruce failed to calculate White's sentence as starting on January 28, 1995, the date set by the district court. According to White, Bruce has intentionally miscalculated the date his sentence begins to effectively deny his jail time credit in contravention of K.S.A. 21-4614.

White's contention is a mere repetition of his first argument. White bases his entire argument on Bruce's sentence calculations and, by working backwards, deduces that Bruce has miscalculated the sentence by using a later beginning date. However, White fails to recognize that Bruce's sentence calculations are based on the theory that White should not receive credit against his postrelease supervision for the time he was incarcerated. In his calculations, Bruce begins White's sentence on January 28, 1995, but only credits his postrelease supervision up to that date. Bruce calculates that White must serve the remainder of his postrelease supervision term upon completion of the first sentence. The disparity in sentence calculations stems from the dispute concerning White's postrelease supervision. White's claim of error is founded on his first argument and does not merit independent consideration.

Reversed.