NOT DESIGNATED FOR PUBLICATION

No. 112,020

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WADE DUNN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOSEPH BRIBIESCA, judge. Opinion filed September 18, 2015. Affirmed in part, vacated in part, and remanded with directions.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., BRUNS and SCHROEDER, JJ.

*Per Curiam*: Wade Dunn appeals from his convictions of one count of burglary, two counts of theft, and one count of criminal threat. On appeal, Dunn argues that the district court erred in failing to instruct the jury on the definition of the word knowingly, as that term is used in the burglary instruction. But Dunn has failed to show that excluding the definition from the jury instructions was clearly erroneous. Dunn also argues that the district court erred in calculating his jail credit. Because it is unclear from the record whether the time Dunn spent in jail was properly credited to another case, we

vacate his sentence and remand for clarification of the actual amount of jail time credit to be applied in this case.

FACTS

On May 24, 2012, 17-year-old Brittany Dean and 23-year-old Wade Dunn went to a party at Dunn's brother's apartment in Wichita. Before going to the party, Dunn and Brittany had spent a short period of time at her parents' house. During the party, Brittany's friend, Jocelyn, received a text saying that her mother was in the hospital. Brittany, who had been drinking alcohol, told Jocelyn to take her car and go to the hospital. Eventually, Dunn left with Jocelyn.

At some point later in the evening, Dunn came back to his brother's apartment. According to Brittany, he was "yelling and he was mad." Dunn took Brittany's cell phone without her permission and left again. Brittany stayed the night at the apartment, and Dunn brought her car back the next day around noon. Brittany's keys were in the car's middle compartment, but her cell phone and wallet—which had been in the glove box—were gone.

Brittany drove to a Dillons store, where she called the police. While she was waiting for the police to come, she went to her grandmother's house that was near the grocery store. While there, Brittany learned from her grandmother that someone had broken into the Deans' house.

Specifically, on the morning of May 25, 2012, two neighbors noticed an out-of-place car in the driveway of the Deans' house. Both neighbors saw two males and a female get out of the car and return with items from the house. They both noted the car's license plate, and one of them called the police. By the time the police arrived, the car was gone. When Brittany's mother, Joey Dean, arrived at her house, she determined that

2

someone had broken in and stolen jewelry, a gun, and several other items. Also, she observed that several items—including a television from one of her son's bedroom—had been moved around within the house.

Subsequently, it was discovered that Brittany's debit card had been used at a Quick Trip at 6:18 a.m. on May 25, 2012. It was used again at Wal-Mart at 6:36 a.m. and then at an ATM at 7:10 a.m. In addition, someone attempted to use her debit card at Sonic at 9:43 a.m. Photographs taken by security cameras at Wal-Mart showed that it was Dunn who used Brittany's debit card. Moreover, the cameras revealed that Dunn was with Michelle Roberts and Nathan Gibson when the debit card was used.

On May 26, 2012, police located the suspect car, which belonged to Sharanda Stackley—Gibson's ex-wife. In processing the vehicle, officers found a pillowcase full of jewelry and other items. Also in the car was a wallet containing Brittany's identification and a purse containing Roberts' identification. Officers located Roberts, and she told them that she had been at a house in Goddard with two males—whom she refused to identify—the day before. Although she indicated that the men had removed property from the house, Roberts stated that she had nothing to do with the items being taken. Officers arrested Roberts and also arrested Gibson.

Dunn called Brittany on May 30, 2012. When she told him about the break-in at her parent's house and stated that her mother wanted her ring back, Dunn told her he was going to burn the house down. When she responded, "'Whatever,'" Dunn replied, "'Watch me, Bitch.'"

On September 28, 2012, Dunn was arrested and ultimately charged in a second amended complaint with one count of burglary, three counts of theft, and one count of criminal threat. A jury trial was held in September 2013. During the trial, Brittany and her mother both testified along with the two neighbors who witnessed the suspicious

3

activities at the Deans' house. Also testifying were a Wal-Mart asset protection manager and a records custodian for the bank from which Brittany's debit card was issued. In addition, several police officers testified about their investigation.

A crime scene investigator testified that she collected latent finger and palm print impressions on a safe and on the television that had been moved from the bedroom of Brittany's brother to another location within the house. A fingerprint examiner compared the impressions taken off the television to known finger and palm prints of Dunn and determined that they matched. Brittany testified that Dunn had never gone into her brother's room while he was at her house on May 24, 2012. In his defense, Dunn called only one witness, Raven Sutter. She testified that Dunn was with her on May 25, 2012, from around 7 a.m. to sometime between noon and 3 p.m.

After deliberations, the jury found Dunn guilty of all of the counts except one of the theft counts relating to Brittany's wallet. Following the verdict, Dunn filed a motion for a new trial or mistrial, in which he argued that the evidence against him was insufficient to prove his guilt beyond a reasonable doubt. On October 24, 2013, the district court denied the motion and sentenced Dunn to a total of 38 months of imprisonment. Thereafter, Dunn timely filed a notice of appeal.

ANALYSIS

*Jury Instructions*

Dunn contends that the district court erred in failing to instruct the jury on the definition of the word "knowingly" as used in the instructions given to the jury on burglary. In response, the State argues that we should not even consider this issue because Dunn invited any error in failure to give the instruction by agreeing to the instructions given to the jury by the district court. See *State v. Jones*, 295 Kan. 804, 811-

4

12, 286 P.3d 562 (2012) (stating that an appellate court need not consider whether the giving of or failure to give a jury instruction was clearly erroneous when the challenge is precluded by the invited error rule). But Dunn's actions do not amount to invited error because he did not specifically request an instruction. See *State v. Todd*, 299 Kan. 263, 271, 323 P.3d 829, *cert. denied* 135 S. Ct. 460 (2014) (citing *State v. Williams*, 295 Kan. 506, 518, 286 P.3d 195 [2012], for the point that "although defendant 'must assume at least some of the responsibility for the omitted instruction by failing to request it,' that failure alone [is] not invited error").

The Kansas Supreme Court has adopted the following progression of analysis in cases involving an alleged error in the jury instructions given by the district court:

> "(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012).

If the first step reveals that an appellant did not properly preserve the issue, we may still grant relief if the giving or failure to give an instruction was clearly erroneous. K.S.A. 22-3414(3). At trial, Dunn did not request the instruction he now claims should have been given nor did he object to the instructions that were given. Therefore, we may only grant relief if the failure to give an instruction defining the word knowingly was clearly erroneous. See K.S.A. 22-3414(3).

5

"To determine whether an instruction or a failure to give an instruction was clearly erroneous, the reviewing court must first determine whether there was any error at all. To make that determination, the appellate court must consider whether the subject instruction was legally and factually appropriate, employing an unlimited review of the entire record.

"If the reviewing court determines that the district court erred in giving or failing to give a challenged instruction, then the clearly erroneous analysis moves to a reversibility inquiry, wherein the court assesses whether it is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. The party claiming a clearly erroneous instruction maintains the burden to establish the degree of prejudice necessary for reversal." *State v. Williams*, 295 Kan. 506, Syl. ¶¶ 4-5, 286 P.3d 195 (2012).

The burglary instruction given by the district court to the jury stated:

"The defendant is charged in count one with the crime of burglary. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1.     That the defendant knowingly entered a dwelling;

"2.     The defendant did so without authority;

"3.     That the defendant did so with the intent to commit a theft therein; and

"4.     This act occurred on or about the 25th day of May, 2012 in Sedgwick County, Kansas."

Here, the district court instructed the jury on the definition of "intentionally"—as set forth in PIK Crim. 4th 52.010—which is the only culpable mental state mentioned in the burglary statute. K.S.A. 2014 Supp. 21-5807. Moreover, if the State has proved that a

6

criminal defendant acted intentionally, it has also established that the person has acted knowingly. See K.S.A. 2014 Supp. 21-5202(c); PIK Crim. 4th 52.020. Accordingly, we do not find the failure to define knowingly to be error under the circumstances presented in this case.

Furthermore, even if it was error not to instruct the jury on the definition of knowingly, Dunn has failed to show that any such error was clearly erroneous. After citing the clearly erroneous standard, Dunn fails to argue that the jury would have reached a different verdict if the instruction was given; therefore, he has waived and abandoned the argument. See *State v. Llamas*, 298 Kan. 246, 264, 311 P.3d 399 (2013) (stating that a point raised incidentally in a brief and not argued therein is deemed abandoned). Thus, he has failed to establish the degree of prejudice necessary for reversal.

*Jail Time Credit*

Dunn also contends that the district court erred in calculating jail time credit that it awarded on his sentencing journal entry. He argues that the alleged incorrect calculation of jail time credit constitutes an illegal sentence. In response, the State points out that the Kansas Supreme Court has indicated that a defendant's claim that the amount of jail time credit was improperly computed does not constitute a claim of an illegal sentence. See *State v. Lofton*, 272 Kan. 216, 217, 32 P.3d 711 (2001). Nevertheless, in the present case Dunn timely appealed from his sentence. Hence, this issue is properly before this court on direct appeal.

Because jail time credit is controlled by statute, it involves a question of law subject to unlimited review. See *Hooks v. State*, 51 Kan. App. 2d 527, 530, 349 P.3d 476 (2015). K.S.A. 2014 Supp. 21-6615(a) provides:

"In any criminal action in which the defendant is convicted, the judge, if the judge sentences the defendant to confinement, shall direct that for the purpose of computing defendant's sentence and parole eligibility and conditional release dates thereunder, that such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment. Such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case. In recording the commencing date of such sentence the date as specifically set forth by the court shall be used as the date of sentence and all good time allowances as are authorized by the secretary of corrections are to be allowed on such sentence from such date as though the defendant were actually incarcerated in any of the institutions of the state correctional system."

At the sentencing hearing, defense counsel stated: "[Dunn] is incarcerated now for a parole violation. He was on probation when this incident happened, so he's already going to be serving substantial time, and we would ask the Court to consider, again, running the counts concurrent, at the very least." Later, the district judge asked if Dunn was "still on paper" in two other cases in which he had been convicted—11CR617 and 11CR487. Defense counsel responded:

"Your Honor, I believe that credit, he was arrested on those cases, so I believe the time he served will likely go toward those cases, it won't go to this one, so if there's any jail time credit for this, it would be nominal, and I don't believe so. I think he has enough controlling prison in his cases to where that will all be allotted to—to those two other cases, Your Honor. So whatever time he gets sentenced on this case, he is going to serve that time on top of whatever he has in the other matters."

The district court then ordered the sentence in this case to run consecutive to Dunn's sentences in 11CR617 and 11CR487. In doing so, the district court stated:

"You will receive credit for time served. But as I stated, you can't get triple credit. You're going to get credit for the time you've served. Which case it'll go to or

8

cases, depending upon the amount of time you've done, perhaps you've maxed out one case, perhaps you've maxed out both of the cases that you were on post-release for, but the point is that you can't get double or triple credit, and if you have any questions about that, Mr. Smith can explain it further."

Ultimately, the district court's journal entry showed that although there were 318 days of available jail credit, only 6 days were allocated to this case. Specifically, the journal entry states: "For the dates above not awarded, Defendant was being held [in this case] and KDOC warrant for Parole Violation in Sedgwick County cases 11CR487 and 11CR617. This warrant was withdrawn on 10/18/13 due to expiration of sentence."

On appeal, Dunn argues that he could not be denied credit on the basis that a KDOC warrant was posted against him for a postrelease violation or because he was serving postrelease supervision. Moreover, Dunn contends that he cannot be denied jail time credit on his sentence in this case because he was only held on a detainer or warrant in the other cases. In support, Dunn cites *State v. Prebble*, 37 Kan. App. 2d 327, Syl. ¶ 2, 152 P.3d 1245 (2007), in which a panel of this court held: "The defendant in a criminal case is entitled to credit for time which the defendant has spent incarcerated pending disposition of the defendant's case, and the defendant shall not be denied jail time credit at sentencing *simply* because the defendant has a detainer or warrant pending from another district." (Emphasis added.) Although this is true, *Prebble* does not stand for the proposition that a defendant should receive credit for the same jail time in more than one case. See 37 Kan. App. 2d at 330-33.

Nevertheless, Dunn argues that his time spent in jail could not be credited to his postrelease supervision in his prior cases. See *State v. Gaudina*, 284 Kan. 354, 362, 160 P.3d 854 (2007) (stating that postrelease supervision is separate from a prison sentence and cannot be served during confinement); *White v. Bruce*, 23 Kan. App. 2d 449, Syl. ¶ 1, 932 P.2d 448 (1997) ("Under the Kansas Sentencing Guidelines, incarceration and

9

postrelease supervision are mutually exclusive sentencing concepts which cannot be satisfied at the same time."). If the time was improperly credited to his postrelease supervision in his prior cases, Dunn contends it should be credited to his current case instead.

Unfortunately, it is unclear from the journal entry—as well as from the record on appeal—how the jail time credit was calculated in this case. In fact, the State recognizes this lack of clarity in arguing:

> "While it is true that the record on appeal [is] less than clear as to whether, at the time of sentencing, the instant defendant was simply subject to a warrant alleging a parole violation, or his prior cases had been treated by the Department of Corrections as [if] he had been revoked, and was therefore serving incarceration time on his prior Sedgwick County convictions while awaiting disposition in the instant case, it appears from the language of the journal entry that the latter is true as there would have otherwise been no reason to indicate that on 10-18-13, the warrant was withdrawn due to the expiration of the prior sentences."

Because of this lack of clarity, we find that it is appropriate to vacate the district court's calculation of jail time credit and to remand this matter for recalculation and/or clarification regarding the amount of jail time credit that should be granted in this case.

Affirmed in part, vacated in part, and remanded with directions.

10