NOT DESIGNATED FOR PUBLICATION

No. 122,236

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JUSTIN T. O'QUINN,
*Appellant*,

v.

STATE OF KANSAS; PRISON REVIEW BOARD; and JOEL HRABE, WARDEN, NORTON
CORRECTIONAL FACILITY,
*Appellees*.


MEMORANDUM OPINION

Appeal from Norton District Court; PRESTON PRATT, judge. Opinion filed October 16, 2020. Reversed and remanded with directions.

*Bradley T. Steen*, of Law Office of B. Truman Steen, LLC, of Ellsworth, for appellant.

*Robert E. Wasinger*, legal counsel, of Kansas Department of Corrections, for appellees.

Before MALONE, P.J., BUSER and POWELL, JJ.

PER CURIAM: Justin T. O'Quinn appeals the district court's denial of his K.S.A. 60-1501 petition, which requested that additional jail credit be applied to his prison sentence in a 2016 criminal case. O'Quinn contends, rather than crediting 365 days of jail time to his term of lifetime postrelease supervision from a prior 2011 criminal case, the Kansas Department of Corrections (KDOC) should have awarded that time as jail credit to his 2016 case. We agree. Accordingly, we reverse and remand with directions that the time O'Quinn was in jail from February 2016 through February 2017 be credited to the 2016 case.

FACTUAL AND PROCEDURAL BACKGROUND

In Sedgwick County case No. 11CR2794 (2011 case), O'Quinn pled guilty to two counts of aggravated indecent solicitation of a child. He received a controlling sentence of 32 months in prison and a lifetime period of postrelease supervision. O'Quinn satisfied the prison portion of his sentence and was released on postrelease supervision in June 2015.

On February 2, 2016, O'Quinn was arrested and placed in custody for violating the Kansas Offender Registration Act in Sedgwick County case No. 16CR194 (2016 case). O'Quinn was held in the county jail for 365 days until he was sentenced on February 1, 2017. The district court sentenced O'Quinn to 24 months in prison for the offender registration violation. O'Quinn was awarded 365 days of jail credit, but the journal entry of sentencing noted that "[f]rom 02/02/16 to 02/01/17 defendant was held on 16CR194 and KDOC warrant. If defendant has received credit for these dates in 11CR2794 then he is not eligible for duplicate credit for these dates in 16CR194."

After O'Quinn was sentenced in the 2016 case, the Kansas Prisoner Review Board (KPRB), in March 2017, revoked his postrelease supervision in the 2011 case The KPRB granted O'Quinn parole to his 24-month sentence in the 2016 case effective October 1, 2018. While in prison, O'Quinn submitted requests which asked the KDOC to apply his 365 days of jail credit to the 2016 case. The KDOC declined and applied the jail credit to the 2011 case because O'Quinn was on postrelease supervision.

O'Quinn timely exhausted his administrative remedies and in June 2019 filed a K.S.A. 60-1501 petition, arguing that his 365 days of jail credit should apply to his 2016 case and his lifetime postrelease supervision was cruel and unusual punishment in violation of the United States and Kansas Constitutions. The district court summarily dismissed the cruel and unusual punishment claim but ordered the State, the KPRB, and

the warden of the Norton Correctional Facility (collectively Respondents) to answer the jail credit issue. After Respondents moved to dismiss the K.S.A. 60-1501 petition, the district court ruled that the 365 days of jail time were properly credited to the 2011 case and O'Quinn was entitled to no jail credit for the 2016 case. O'Quinn filed a timely appeal.

ANALYSIS

O'Quinn contends the 365 days of jail time he served between February 2, 2016, and February 1, 2017, should have been credited to his 2016 case because his postrelease supervision had not been revoked before he was sentenced in that later case.

Preliminarily, O'Quinn does not challenge the district court's dismissal of his cruel and unusual punishment claim and, therefore, he has abandoned that issue. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (An issue not briefed is deemed waived or abandoned.).

We begin the analysis with a brief summary of Kansas law relating to K.S.A. 60-1501 petitions, our standards of review, and statutory principles of awarding jail credit. To state a claim for relief under K.S.A. 60-1501, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). "[I]f, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists," then summary dismissal is proper. 289 Kan. at 648-49; see K.S.A. 2019 Supp. 60-1503(a).

We exercise unlimited review over a district court's summary dismissal of a K.S.A. 60-1501 petition. 289 Kan. at 649. Moreover, our review of the district court's jail

3

credit determination requires us to interpret the revised Kansas Sentencing Guidelines Act. Interpretation of sentencing statutes is a question of law over which we exercise unlimited review. *State v. Warren*, 307 Kan. 609, 612, 412 P.3d 993 (2018).

Kansas provides a statutory right to jail time credit. *State v. Hopkins*, 295 Kan. 579, 581, 285 P.3d 1021 (2012). Under K.S.A. 2019 Supp. 21-6615(a), a defendant's sentence starting date is computed to allow credit for "the time which the defendant has spent incarcerated pending the disposition of the defendant's case." Our Supreme Court has clarified that a defendant is entitled to jail credit for all time held in custody solely on the charge for which the defendant is being sentenced. *State v. Harper*, 275 Kan. 888, 890, 69 P.3d 1105 (2003).

Of particular importance to this appeal, our court has repeatedly held that a defendant may not receive jail credit towards an unrevoked term of postrelease supervision for time spent incarcerated on a new charge which results in a conviction and sentence. *White v. Bruce*, 23 Kan. App. 2d 449, Syl. ¶ 2, 932 P.2d 448 (1997); *State v. McLemore*, No. 116,119, 2017 WL 6625552, at *2 (Kan. App. 2017) (unpublished opinion) (listing cases). Instead, postrelease supervision is suspended when a defendant is incarcerated, unless the State revokes that postrelease supervision. *White*, 23 Kan. App. 2d at 455. As a result, when a defendant's postrelease supervision has not been revoked before sentencing on a new charge, any jail time credit earned on the new charge must be credited towards the new sentence—*not* the older postrelease period or any undetermined administrative punishment later arising from a potential postrelease violation. *State v. Bray*, No. 119,560, 2019 WL 3756205, at *2 (Kan. App. 2019) (unpublished opinion).

O'Quinn was held in custody for 365 days between February 2, 2016, and February 1, 2017, on the offender registration violation charge in the 2016 case. Because his postrelease supervision was not revoked until after he was sentenced, O'Quinn's postrelease supervision was suspended during the time he was in jail. As a result, under

*White* and the plethora of unpublished cases that faithfully adhere to that opinion, the district court erred by finding that the 365 days of jail time was properly credited towards the 2011 case.

While acknowledging the caselaw contrary to their position, Respondents maintain the KDOC correctly credited the 365 days of jail time towards the term of postrelease supervision in the 2011 case. They claim that, contrary to the reasoning in *White*, "'postrelease supervision' is not a location in the community that automatically tolls if the offender is confined. Rather 'postrelease supervision' is a specific time period comprising a sentence obligation that follow[s] upon the expiration of the specific sentence obligation consisting of the 'prison portion' of the sentence." In support of their legal contention, Respondents point to K.S.A. 2019 Supp. 22-3717, K.S.A. 2019 Supp. 22-3722, and K.S.A. 75-5217, which address aspects of postrelease supervision.

Postrelease supervision is defined as "the release of a prisoner to the community after having served a period of imprisonment." K.S.A. 2019 Supp. 21-6803(p). Inmates are released on postrelease supervision after the prison portion of their sentences is terminated and "[t]ime served while on postrelease supervision will vest." K.S.A. 2019 Supp. 21-3717(q). Another reference to vesting of the time served while on postrelease supervision is found in K.S.A. 2019 Supp. 22-3722, which addresses the service and discharge of postrelease supervision. This statute provides that "[t]he period served on postrelease supervision shall vest in and be subject to the provisions contained in K.S.A. 75-5217, and amendments thereto, relating to an inmate who is a fugitive from or has fled from justice." K.S.A. 2019 Supp. 22-3722.

As suggested in K.S.A. 2019 Supp. 22-3722, time served on postrelease supervision is subject to K.S.A. 75-5217(f), which is a lengthy provision explaining that a released inmate receives no credit towards his or her sentence from the date an arrest

5

warrant for violating conditions of release is issued and another time depending on the circumstances. The subsection states, in part:

"If the secretary of corrections issues a warrant for the arrest of a released inmate for violation of any of the conditions of release and the released inmate is subsequently arrested in the state of Kansas, either pursuant to the warrant issued by the secretary of corrections or for any other reason, the released inmate's sentence shall not be credited with the period of time from the date of the issuance of the secretary's warrant to the date of the released inmate's arrest, except as provided by subsection (i).

"If a released inmate for whom a warrant has been issued by the secretary of corrections for violation of the conditions of release is subsequently arrested in another state, and the released inmate has been authorized as a condition of such inmate's release to reside in or travel to the state in which the released inmate was arrested, and the released inmate has not absconded from supervision, the released inmate's sentence shall not be credited with the period of time from the date of the issuance of the warrant to the date of the released inmate's arrest, except as provided by subsection (i). If the released inmate for whom a warrant has been issued by the secretary of corrections for violation of the conditions of release is subsequently arrested in another state for reasons other than the secretary's warrant and the released inmate does not have authorization to be in the other state or if authorized to be in the other state has been charged by the secretary with having absconded from supervision, the released inmate's sentence shall not be credited with the period of time from the date of the issuance of the warrant by the secretary to the date the released inmate is first available to be returned to the state of Kansas, except as provided by subsection (i). If the released inmate for whom a warrant has been issued by the secretary of corrections for violation of a condition of release is subsequently arrested in another state pursuant only to the secretary's warrant, the released inmate's sentence shall not be credited with the period of time from the date of the issuance of the secretary's warrant to the date of the released inmate's arrest, regardless of whether the released inmate's presence in the other state was authorized or the released inmate had absconded from supervision, except as provided by subsection (i)." K.S.A. 75-5217(f).

K.S.A. 75-5217(f) sets out four situations where a warrant for violating conditions of release was issued against a released inmate. When the released inmate is arrested in

6

Kansas, as occurred in this case, then K.S.A. 75-5217(f) provides that no time is credited to the released inmate's sentence for the period between the warrant's issuance and the date of the inmate's arrest. Respondents argue that, under K.S.A. 2019 Supp. 22-3722 and K.S.A. 75-5217(f), only this period between the warrant's issuance and the arrest was not credited towards O'Quinn's postrelease supervision; at all other times—including between O'Quinn's arrest and his sentencing in the 2016 case—the time was credited to the term of postrelease supervision. However, our court rejected this same argument in *White*. 23 Kan. App. 2d at 451-52.

Ultimately, Respondents' argument assumes that O'Quinn remained on postrelease supervision during the 365 days at issue despite his incarceration. But contrary to Respondents' contentions, our Supreme Court has noted that the Kansas Legislature clearly intended that "postrelease supervision is a period when the defendant is released into the community—not a period while incarcerated—and occurs after confinement— not during confinement." *State v. Gaudina*, 284 Kan. 354, 362, 160 P.3d 854 (2007). The *Gaudina* court explained that incarceration is incompatible with time served on postrelease supervision:

> "Substantively, while confined, a defendant is removed from society and severely restricted in activities and conduct for the primary purposes of penalizing the defendant while protecting society. While on postrelease supervision, the defendant is in the community and the parole board is empowered to impose conditions targeted toward facilitating rehabilitation, restitution, and safe reintegration into society. 284 Kan. at 359.

Resolving Respondents' statutory argument with our Supreme Court's interpretation of postrelease supervision, a defendant serves time on postrelease supervision when the defendant is released in the community after confinement. Since a defendant is not in the community when subsequently incarcerated, the defendant is not serving time on postrelease supervision while confined. The provisions in K.S.A. 75-5217(f) explain situations where time spent in the community, which would otherwise

7

count towards postrelease supervision, is not credited towards a defendant's sentence. And the time spent serving postrelease supervision before the issuance of a warrant or incarceration is vested. K.S.A. 2019 Supp. 22-3717(q).

Because postrelease supervision requires the defendant to be released into the community—not incarcerated—the 365 days of jail time was improperly credited towards O'Quinn's lifetime postrelease supervision in the 2011 case. Since O'Quinn was not serving his postrelease supervision term, he was incarcerated from February 2, 2016, until February 1, 2017, solely on the offender registration violation conviction in the 2016 case. Accordingly, O'Quinn was entitled to receive credit for that jail time towards his sentence in the 2016 case. The KDOC incorrectly credited the 365 days against O'Quinn's lifetime postrelease supervision term in the 2011 case, and the district court erred by ruling that O'Quinn was not entitled to have that jail credit applied to his 2016 case.

We reverse the district court's order dismissing O'Quinn's K.S.A. 60-1501 petition and order that the 365 days of jail time served between February 2, 2016, and February 1, 2017, be credited towards O'Quinn's sentence in the 2016 case. We also order that any jail time be credited towards O'Quinn's postrelease supervision in the 2011 case for time served during this period be set aside. See *State v. Blazier*, No. 116,148, 2017 WL 3575656, at *2 (Kan. App. 2017) (unpublished opinion) ("When [the] potential for double credit arises, a court may correct the amount of jail time credit after sentencing."); see also *State v. Storer*, 53 Kan. App. 2d 1, 5, 382 P.3d 467 (2016) (reasoning that K.S.A. 22-3504[2] allows a court to correct clerical mistakes, such as most jail credit determinations, at any time).

Reversed and remanded with directions.