(243 P.3d 708)
No. 103,317

BRIAN SHIRLEY, *Appellant*, v. KANSAS DEPARTMENT OF
REVENUE, *Appellee*.

Opinion filed
December 10, 2010.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*John D. Shultz* and *James G. Keller*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before PIERRON, P.J., GREEN and MARQUARDT, JJ.

GREEN, J.: Brian Shirley appeals from the trial court's decision affirming the administrative suspension of his driving privileges. Shirley argues that the trial court erroneously determined that an individual who operates a minitruck, for which a license is not required and which cannot be legally operated on a public highway, is subject to suspension of his or her driving privileges. We disagree. We determine that a minitruck fits within the plain language of the definition of vehicle under K.S.A. 2006 Supp. 8-1485 and that the Kansas Department of Revenue properly suspended Shirley's driving privileges under the Kansas implied consent law. Accordingly, we affirm.

On September 16, 2006, Shirley was transporting himself in a minitruck on the Kansas State Fairgrounds in Hutchinson, Kansas, when he was stopped by Kansas Highway Patrol Trooper Walker. A minitruck is self-propelled by a gasoline powered engine and is not a device moved by human power. A minitruck is not used exclusively upon stationary rails or tracks and is not a motorized bicycle or a motorized wheelchair.

When Walker stopped Shirley, Shirley had an odor of alcohol on his breath, slurred speech, and bloodshot eyes. Shirley admitted to consuming an alcoholic beverage or beverages. In addition, Shirley failed field sobriety tests and a preliminary breath test. Shirley was arrested and submitted to a blood test with a result of .16 grams per 100 milliliters of blood.

Shirley was issued an Officer's Certification and Notice of Suspension, Form DC-27, under the Kansas implied consent law. Shirley requested an administrative hearing to challenge the suspension of his driving privileges.

The record indicates that after an administrative hearing was held, the hearing officer took the matter under advisement for 2 weeks for Shirley's attorney to send information about the minitruck that Shirley was operating. On May 24, 2007, Shirley's attorney sent a letter to the hearing officer and enclosed a sales brochure for minitrucks. The sales brochure described the minitruck as weighing 1,400 pounds and having a 3- or 4-cylinder, 650 cc.,

45-horsepower motor. According to the sales brochure, the minitruck is 52 inches wide, has a 4-speed transmission, and will run about 60 miles per hour.

After receiving this information, the hearing officer issued an administrative order affirming the administrative action seeking to suspend Shirley's driving privileges. Shirley petitioned the trial court for review of the administrative decision. The parties submitted the matter to the trial court by stipulations of fact, which included as an exhibit the sales brochure on minitrucks.

In a written memorandum decision, the trial court noted that the only issues in this case were the following: (1) Is a minitruck a vehicle under the applicable statutes? and (2) Is operation of a vehicle on the state fairgrounds, as opposed to on the streets or highways, while under the influence of alcohol a violation of the Kansas implied consent law? After determining that the answer to both of those questions was yes, the trial court affirmed the administrative decision to suspend Shirley's driving privileges.

On appeal, Shirley contends that the trial court erroneously determined that an individual who operates a minitruck, for which a license is not required and which cannot be legally operated on a public highway, is subject to suspension of his or her driving privileges under the Kansas implied consent law.

*Standards of Review*

When a case is decided by the trial court based upon documents and stipulated facts, the standard of appellate review is de novo. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271, 202 P.3d 7 (2009). Where controlling facts are based on written or documentary evidence from pleadings, admissions, depositions, and stipulations, the trial court has no particular opportunity to evaluate the witnesses' testimony. Thus, in such situations, an appellate court is in as good a position as the trial court to examine and consider the evidence and to determine what the facts establish as a matter of law. Additionally, appellate review of the trial court's conclusions of law is unlimited. *Crawford v. Hrabe*, 273 Kan. 565, 570, 44 P.3d 442 (2002).

In addition, Shirley's arguments on this issue require the interpretation of statutes. Interpretation of a statute presents a question of law over which this court has unlimited review. *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meaning. *Padron v. Lopez*, 289 Kan. 1089, 1097, 220 P.3d 345 (2009). When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. *Double M Constr.*, 288 Kan. at 271-72.

*Is a minitruck a "vehicle" for purposes of the Kansas implied consent law?*

K.S.A. 2006 Supp. 8-1001 of the Kansas implied consent law provides for the suspension of a person's driving privileges if that person operates or attempts to operate a vehicle within Kansas when that person has an alcohol concentration of .08 or greater. The portion of K.S.A. 2006 Supp. 8-1001 relevant to the facts of this case provides as follows:

"(a) Any person who operates or attempts to operate a vehicle within this state is deemed to have given consent, subject to the provisions of this act, to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs. . . .

"(b) A law enforcement officer shall request a person to submit to a test or tests deemed consented to under subsection (a) If the officer has reasonable grounds to believe the person·was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both, or to believe that the person was driving a commercial motor vehicle, as defined in K.S.A. 8-2,128, and amendments thereto, while having alcohol or other drugs in such person's system, or was under the age of 21 years while having alcohol or other drugs in such person's system; and one of the following conditions exists: (1) The person has been arrested or otherwise taken into custody for any offense involving operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both, or for a violation of K.S.A. 8-1567a, and amendments thereto, or involving driving a

commercial motor vehicle, as defined in K.S.A. 8-2,128, and amendments thereto, while having alcohol or other drugs in such person's system, in violation of a state statute or a city ordinance."

The Kansas implied consent law refers to individuals who "operate or attempt to operate *a vehicle* within this state . . . ." K.S.A. 2006 Supp. 8-1485 defines "vehicle" as "every device in, upon or by which any person or property is or may be transported or drawn upon a highway, except electric personal assistive mobility devices or devices moved by human power or used exclusively upon stationary rails or tracks." The word "highway" is defined in K.S.A. 8-1424 as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel."

As the Kansas Department of Revenue points out in its brief, Shirley chiefly argues that because the minitruck that he was operating on the Kansas State Fairgrounds could not be legally operated on a public highway, it could not be considered a vehicle under the Kansas implied consent law. Shirley's partial syllogism composed of a minor premise and a conclusion leaves out the major premise. The reconstruction of the assumed major premise into a categorical syllogism shows the fallacy of this deductive argument:

Major Premise: All operators of vehicles that can be legally operated on a public highway must comply with the Kansas implied consent law.

Minor Premise: Operators of vehicles that cannot be legally operated on a public highway are not operators of vehicles that can be legally operated on a public highway.

Conclusion: Therefore, operators of vehicles that cannot be legally operated on a public highway are not required to comply with the Kansas implied consent law.

The major term (Kansas implied consent law) is distributed in the universal negative conclusion. The rule requires that any term distributed in the conclusion of a categorical syllogism must also be distributed where it appears as a premise. Nevertheless, the major term is not distributed in the major premise, where it appears as the predicate term in a universal affirmative categorical proposition.

Here, Shirley seeks to draw a conclusion about the whole class concerning the application of the Kansas implied consent law when the whole class was not referred to in its entirety in the major premise. Only part of the whole class was considered. For example, there are many occasions when operators of a vehicle are required to follow the Kansas implied consent law even when they are not operating their vehicle upon a public highway.

The conclusion suggests that the entire class of operators of vehicles that cannot be legally operated on a public highway are not required to comply with the Kansas implied consent law. Nevertheless, the major premise does not show that only operators of vehicles that can be legally operated on a public highway must comply with the Kansas implied consent law. Thus, the conclusion goes beyond what the major premise provides. Accordingly, Shirley's argument is invalid, having committed the fallacy of the illicit process of the major term. Aldisert, Logic for Lawyers, p. 153 (3d ed. 1997).

Furthermore, Shirley's position requires a distorted reading of K.S.A. 2006 Supp. 8-1485. Shirley suggests that the adverbial phrase "upon a highway" modifies both the verbs "transported" and "drawn." Such a reading, however, is not necessarily supported by the plain language of the statute. The placement of the adverbial phase "upon a highway" directly after the verb "drawn" suggests that it modifies only that verb. Thus, a reasonable interpretation of the statute could be that a vehicle is a device in, upon, or by which any person or property is or may be (1) transported or (2) drawn upon a highway. Under this interpretation of 2006 Supp. K.S.A. 8-1485, a minitruck would fit within the definition of vehicle because it is a device by which a person is or may be transported. Moreover, a minitruck is not one of the items specifically excluded from the definition of vehicle under K.S.A. 2006 Supp. 8-1485.

Nevertheless, even if the adverbial phrase was intended to modify both the verbs "transported" and "drawn," Shirley's argument still lacks merit. At oral arguments, Shirley's attorney emphasized the verb "is" in K.S.A. 2006 Supp. 8-1485 and did not focus on the word "or" in that statute: "every device in, upon or by which any person or property *is* or may be transported or drawn upon a high-

way." (Emphasis added.) Nevertheless, such an emphasis on the verb "is" does not comport with the plain language of the statute. Although the stipulated facts in this case fail to show that the minitruck was actually being operated on a highway when Shirley was pulled over by Trooper Walker, the evidence presented by Shirley relating to the features of the minitruck certainly showed that the minitruck was capable of being operated on a highway.

As set forth previously, the legislature defined a vehicle as "every device in, upon or by which any person or property is or *may* be transported or drawn upon a highway" subject to certain named exceptions. (Emphasis added.) See K.S.A. 8-1485. Black's Law Dictionary 1068 (9th ed. 2009) defines "may" as follows: "1. To be permitted to . . . 2. *To be a possibility.* . . . 3. Loosely, is required to; shall; must. . . ." (Emphasis added.) The appellate record in this case shows that the minitruck has a 3- or 4-cylinder, 650 cc., 45-horsepower motor; weighs 1,400 pounds; is 52 inches in width; and can travel at about 60 miles per hour. The minitruck would fit the definition of a "vehicle" (a "device in, upon or by which any person or property is or may be transported or drawn upon a highway" other than "an electric personal assistive mobility device or devices moved by human power or used exclusively upon stationary rails or tracks"). Such a truck could be used to transport a person or property "between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." See K.S.A. 8-1424.

Shirley maintains, however, that the language of K.S.A. 2006 Supp. 8-1485 does not apply to his conduct because "[a] 'minitruck' *cannot* be used to transport a person or property upon a highway. In fact, not only is a mini-truck not 'street legal', in other words capable of being operated on a highway, but also does not require the use of a driver's license to operate."

With this argument, Shirley is attempting to add the requirement that the device be street legal and require the use of a driver's license to operate to the definition of 2006 Supp. K.S.A. 8-1485. Nevertheless, by including the term "means" within K.S.A. 2006 Supp. 8-1485, the legislature has restricted the definition of "vehicle" to that which is found within K.S.A. 2006 Supp. 8-1485.

As set forth in Child, Drafting Legal Documents: Materials and Problems, Stipulative Definitions, pp. 237-39 (1988), there are three essential types of stipulative definitions for purposes of legal drafting: restricting, enlarging, and confining. Restricting definitions use the verb "means." With a restricting definition, the common meaning of the term does not change, but the definition restricts the number of particulars to which it applies. A restricting definition "is total rather than partial and stipulates something *instead* of common meaning." Child, p. 239. In an enlarging definition, the common meaning of a term changes to add to the number of particulars to which the term applies. Enlarging definitions use the verb "includes." An enlarging definition "stipulates common meaning *plus* something." Child, p. 239. Finally, confining definitions expressly delete some of the particulars that are part of the common meaning of the term defined. Confining definitions use the verb "does not include." A confining definition "stipulates common meaning *minus* something." Child, p. 239.

Here, by using the word "means" in defining term "vehicle," the legislature has expressed its intent to limit the definition of "vehicle" to those requirements set forth in the statute. The term "means" is used to stipulate the complete and exclusive meaning of "vehicle." See *Southwestern Bell Telephone v. APAC-Kansas, Inc.*, 36 Kan. App. 2d 299, 310, 138 P.3d 1238 (2006); Child, p. 237. This means that nothing can be added or deleted from the definition of a vehicle by interpretation. Under the plain language of K.S.A. 2006 Supp. 8-1485, the legislature did not intend to include the requirement that the device be registered or "street legal" and require a driver's license to operate within that statute. As a result, the additional requirements that Shirley seeks to impose upon the definition of vehicle under K.S.A. 2006 Supp. 8-1485 cannot stand.

Importantly, if the legislature had intended for the definition of vehicle under K.S.A. 2006 Supp. 8-1485 to include by implication the requirement that the device be registered or "street legal" and require a driver's license to operate, the language under K.S.A. 2006 Supp. 8-1485 excluding certain devices from the definition of vehicle would have been unnecessary. For example, the legis-

lature specifically excluded "electric personal assistive mobility devices or devices moved by human power or used exclusively upon stationary rails or tracks" from the definition of vehicle under K.S.A. 2006 Supp. 8-1485. Many, if not all, of those devices, however, are not registered under county and state law and do not require a driver's license to operate. Thus, the legislature's specific exclusion of those devices from the definition of vehicle under K.S.A. 2006 Supp. 8-1485 weighs against Shirley's argument in this case.

Moreover, if this court were to adopt Shirley's reasoning, then it would have to hold that whether a device is registered and licensed for highway use and whether it requires a driver's license to operate would determine whether the Kansas implied consent law applies to the person driving the device. Such a holding would not be in line with the legislature's policy in enacting the Kansas implied consent law, which is to prevent intoxicated individuals from handling a vehicle and to protect the public's safety and welfare. As clearly set forth in K.S.A. 2006 Supp. 8-1001(v), "[t]his act is remedial law and shall be liberally construed to promote public health, safety and welfare."

Surely, a person operating a 1,400-pound device with a 45-horsepower engine that is capable of going 60 miles per hour exemplifies the risk or danger that the legislature sought to prevent in enacting the Kansas implied consent law. In an intoxicated state, that person could conceivably veer into the range of pedestrian traffic or into oncoming traffic on a highway and create a great danger to other travelers. See *State v. Richardson*, 113 N.M. 740, 742, 832 P.2d 801 (1992) ("Surely, no one would argue that a farm tractor suddenly veering into oncoming traffic on a highway would be any less dangerous than an automobile operated in the same manner."); see also *Covert v. Fisher*, 151 S.W.3d 70 (Mo. App. 2004) (upholding suspension of driving privileges where petitioner was driving golf cart while intoxicated on streets of public subdivision).

Based on the above reasoning, we determine that a minitruck fits within the definition of vehicle under K.S.A. 2006 Supp. 8-1485 and that the Kansas Department of Revenue properly sus-

pended Shirley's driving privileges under the Kansas implied consent law.

*Work-site Vehicle*

It is important to point out that the Kansas Department of Revenue argues that the minitruck appears to be a "work-site utility vehicle" as defined in K.S.A. 2009 Supp. 8-1493 and would be included within the larger category of "vehicles" under K.S.A. 8-1485.

The problem with the Kansas Department of Revenue's argument is that the stipulated facts and the attached sales brochure did not establish all of the requirements under K.S.A. 2009 Supp. 8-1493 in order for the minitruck to fit within the definition of a work-site utility vehicle. K.S.A. 2009 Supp. 8-1493 defines a work-site utility vehicle as follows:

" 'Work-site utility vehicle' means any motor vehicle which is not less than 48 inches in width, has an overall length, including the bumper, of not more than 135 inches, has an unladen weight, including fuel and fluids, of more than 800 pounds and is equipped with four or more low pressure tires, a steering wheel and bench or bucket-type seating allowing at least two people to sit side-by-side, and may be equipped with a bed or cargo box for hauling materials. 'Work-site utility vehicle' does not include a micro utility truck."

The record in this case fails to establish the overall length of the minitruck and whether the minitruck has "four or more low pressure tires, a steering wheel and bench or bucket-type seating allowing at least two people to sit side-by-side." As a result, we are unable to determine that the minitruck driven by Shirley fits within the definition of a work-site utility vehicle under K.S.A. 2009 Supp. 8-1493.

Nevertheless, based on the previous analysis, we determine that a minitruck fits within the definition of a vehicle under K.S.A. 2006 Supp. 8-1485. As a result, we affirm the trial court's decision affirming the administrative suspension of Shirley's driving privileges.

Affirmed.