NOT DESIGNATED FOR PUBLICATION

No. 113,286

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GREGORY SPIGHT,
*Appellant*,

v.

JAMES HEIMGARTNER, WARDEN
EL DORADO CORRECTIONAL FACILITY, *et al.*,
*Appellees*.

MEMORANDUM OPINION

Appeal from Labette District Court; ROBERT J. FLEMING, judge. Opinion filed November 13, 2015. Reversed and remanded with directions.

*Gregory Spight*, appellant pro se.

*Michael J. Smith*, legal counsel, of Kansas Department of Corrections, of El Dorado, for appellee.

Before BRUNS, P.J., STANDRIDGE, J., and BURGESS, S.J.

*Per Curiam*: Gregory Spight is currently serving a 68-month prison sentence imposed in July 2011. He petitioned the district court for habeas relief under K.S.A. 60-1501, arguing the Kansas Department of Corrections (KDOC) erroneously deprived him of all but 24 of the 720 days of jail credit the sentencing court ruled he is entitled to receive toward that sentence. The warden moved to dismiss, arguing Spight was not entitled to the other 696 days of jail credit because Spight was on postrelease supervision in an older case for all but 24 of the 720 days Spight spent in jail. Spight appealed from

1

the district court's judgment denying him habeas relief. We reverse and remand with directions.

FACTUAL AND PROCEDURAL BACKGROUND

A chronology of pertinent events will best provide context for the issues facing this court.

- April 11, 2008, Gregory Spight was released from the prison portion of his sentence in Sedgwick County District Court case No. 02 CR 2409 to begin serving the 36-month postrelease supervision term of that sentence.

- July 23, 2009, Spight was jailed as a result of a new criminal case filed against him in Sedgwick County District Court case No. 09 CR 2051.

- September 15, 2010, Spight pled guilty in case No. 09 CR 2051 to a charge of criminal solicitation to commit second-degree murder.

- June 18, 2011, having earned a total of 158 days of good time credit, the Kansas Parole Board discharged Spight from his postrelease supervision in case No. 02 CR 2049. He was originally scheduled to be released on November 26, 2011.

- On July 12, 2011, the district court sentenced Spight to serve 68 months in prison for his conviction in case No. 09 CR 2051. The journal entry of sentencing indicates the district court ordered that sentence to run consecutively to Spight's sentence in case No. 02 CR 2409. See K.S.A. 2014 Supp. 21-6606(c) ("Any person who is convicted and sentenced for a crime committed while on probation, assigned to a community correctional services program, on parole, on conditional release or on postrelease

2

supervision for a felony shall serve the sentence consecutively to the term or terms under which the person was on probation, assigned to a community correctional services program or on parole or conditional release."). This was apparently in response to the State's recommendation as part of the plea agreement entered some time before Spight's conviction in September 2010—*i.e.*, before Spight had been discharged from his sentence in case No. 02 CR 2409. There is no transcript of the sentencing hearing or any indication of whether anyone was aware at the time that the Parole Board had discharged Spight from his sentence in case No. 02 CR 2409—just 24 days earlier.

Spight remained in custody during the entire 720-day period between July 23, 2009, and July 12, 2011. Accordingly, the journal entry of sentencing indicates that the district court held Spight is entitled to 720 days of jail credit, resulting in a sentence begins date of July 23, 2009. See K.S.A. 2014 Supp. 21-6615(a) (setting forth the sentencing judge's obligation to designate sentence begins date in any case in which a defendant is convicted and sentenced to confinement). A note just below that computation states:  "If defendant has received credit for [the period between July 23, 2009, through July 12, 2011,] in Case No. 02CR2409, he should not be granted duplicate credit herein." The KDOC apparently concluded that he did get credit in case No. 02 CR 2409 because it calculated Spight's sentence when he arrived at the prison by giving him only 24 days of that credit. This resulted in a sentence begins date as June 18, 2011, rather than July 23, 2009, and a "projected release date" of April 5, 2016.

On February 13, 2014, Spight sent a letter to the KDOC's Sentence Computation Unit in Topeka complaining that it had wrongfully ignored or changed the district court's calculation of his sentence based on the jail credit. Based on Spight's argument, his projected release date should be moved up to May 10, 2014, (April 5, 2016, minus 696

3

days of wrongfully withheld jail credit). The record does not indicate the KDOC ever received that letter, and Spight apparently never received a response.

On March 27, 2014, Spight filed a petition for habeas corpus relief under K.S.A. 2014 Supp. 60-1501 (60-1501 petition) in the Butler County District Court, where he was incarcerated at the time. That court authorized the court clerk to issue summons to the respondents (the warden) and ordered an answer or responsive pleading to be filed. The district court eventually transferred venue to Labette County after Spight was transferred to a unit of the prison there.

The warden filed an answer and moved to dismiss Spight's petition for failure to exhaust administrative remedies and failure to state a claim. Highly summarized, the warden argued dismissal was proper because the KDOC properly calculated Spight's sentence in case No. 09 CR 2051. In support, the warden highlighted the fact that the district court held Spight should not receive duplicate credit and alleged "[t]he majority of [Spight's] jail credit was applied to 02CR2049."

Spight filed a response alleging he had done all he could to exhaust his available administrative remedies. He further claimed that even if the warden was right and his credit was properly applied in case No. 02 CR 2049, then he should have received more good time credit toward his postrelease supervision period in that case. The warden replied that the KDOC also properly calculated Spight's good time credit.

On January 12, 2015, the district court entered judgment granting the warden's motion to dismiss. The district court noted that the exhaustion of administrative remedies was a prerequisite to the filing of an action under K.S.A. 2014 Supp. 60-1501 but did not make any specific findings in that regard. The district court then went on to hold that based on the undisputed facts, Spight "has received all of the good time credit due him" (158 days), so "[Spight's] sentence discharge date was adjusted from November 26, 2011,

4

to June 18, 2011." Pertinent to this appeal, the district court further held: "[t]he sentencing court made it clear in the Journal Entry that post-release supervision and the sentence imposed cannot be satisfied at the same time." Spight then timely initiated this appeal from that judgment.

SHOULD THIS APPEAL BE DISMISSED BECAUSE SPIGHT FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES?

The initial issue to be determined is the warden's contention that the district court's failure to rule on his exhaustion argument deprives this court of jurisdiction. Spight's response is two-fold. First, Spight contends that he raises a computation issue, which is not a grievance subject to exhaustion under the procedures in K.A.R. 44-15-101 *et seq.* Second, Spight states that he exhausted his remedies to the best of his ability by attempting to call the Sentence Computation Unit with the help of his unit counselor at the prison and then sending the letter after those attempts failed.

Whether jurisdiction is lacking due to a failure to exhaust administrative remedies presents a question of law over which appellate courts have unlimited review. *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 622-23, 24 P.3d 128 (2001).

K.S.A. 75-52,138 requires an inmate to exhaust available administrative remedies "established by rules and regulations promulgated by the secretary of corrections" before bringing an action in district court and to file proof of such exhaustion with a 60-1501 petition. *Boyd v. Werholtz*, 41 Kan. App. 2d 15, 17, 203 P.3d 1 (2008). Such rules and regulations are generally found at K.A.R. 44-15-101 *et seq.* The 30-day time limit for an inmate to file a 60-1501 petition is extended "during the pendency of the inmate's timely attempts to exhaust such inmate's administrative remedies." K.S.A. 2014 Supp. 60-1501(b).

5

Careful attention must be paid to the specific argument advanced here by the warden. He does not brief how or why he believes Spight failed to exhaust his administrative remedies. Rather, the warden's sole contention is that this court lacks jurisdiction because after recognizing the warden raised the exhaustion issue, the district court failed to make findings or otherwise rule on it.

Notably, the record does not indicate the warden ever complained to the district court about this lack of findings of fact or conclusions of law. This court recently held under similar circumstances that the State failed to preserve a similar exhaustion argument by failing to object to the lack of findings of fact or conclusions of law on that issue by the district court. *Hooks v. State*, 51 Kan. App. 2d 527, 529, 349 P.3d 476 (2015). Given the limits on the warden's argument on this issue, we find that the warden failed to preserve this issue for appeal.

### DID THE DISTRICT COURT ERR IN SUMMARILY DISMISSING SPIGHT'S K.S.A. 60-1501 PETITION?

Turning now to the merits, Spight contends the district court erroneously dismissed his petition for habeas relief by concluding Spight was not entitled to the jail credit he sought in case No. 09 CR 2051 because he received credit for that time toward his postrelease supervision period in case No. 02 CR 2049. The warden responds that the district court's decision is proper because postrelease supervision in one case and incarceration on another charge cannot be satisfied at the same time.

Although the district court stated that it granted the warden's motion to dismiss for failure to state a claim, a close reading of the decision indicates the court actually denied the petition on its merits. Generally, when reviewing a district court's decision on the merits of a K.S.A. 60-1501 petition, this court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence and are

6

sufficient to support the district court's conclusions of law. This court then conducts de novo review of those conclusions. *Hooks*, 51 Kan. App. 2d at 530. Here, the district court summarily decided Spight's petition on its merits based solely on the documentary evidence submitted by the parties with their pleadings. As this court has recognized:

> "Where controlling facts [underlying a court's judgment on review] are based on written or documentary evidence from pleadings, admissions, depositions, and stipulations, the trial court has no particular opportunity to evaluate the witnesses' testimony. Thus, in such situations, an appellate court is in as good a position as the trial court to examine and consider the evidence and to determine what the facts establish as a matter of law." *Shirley v. Kansas Dept. of Revenue*, 45 Kan. App. 2d 44, 46, 243 P.3d 708 (2010).

Accordingly, this court conducts a de novo review of the undisputed documentary evidence the parties submitted in support of their positions below to determine if Spight is entitled to have the KDOC recalculate his sentence in case No. 09 CR 2051. To the extent that resolution of the issue requires statutory interpretation, review of such questions is also de novo. *Hooks*, 51 Kan. App. 2d at 530.

In sentencing Spight in case No. 09 CR 2051, the district court calculated the amount of jail credit Spight was entitled to and then used that information to calculate the sentence begins date reflected in the journal entry of sentencing under the authority of K.S.A. 2014 Supp. 21-6615(a). That statute directs:

> "In any criminal action in which the defendant is convicted, the judge, if the judge sentences the defendant to confinement, shall direct that for the purpose of computing defendant's sentence and parole eligibility and conditional release dates thereunder, that such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment. Such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case. In recording the commencing date of such sentence the date as specifically set forth

7

by the court shall be used as the date of sentence and all good time allowances as are authorized by the secretary of corrections are to be allowed on such sentence from such date as though the defendant were actually incarcerated in any of the institutions of the state correctional system." K.S.A. 2014 Supp. 21-6615(a).

Our courts have interpreted this statute to mean, "a defendant is entitled to this credit for time spent in custody only when he or she is being held *solely* on the charge for which the defendant is being sentenced." *Hooks*, 51 Kan. App. 2d at 531 (citing *State v. Denney*, 278 Kan. 643, 648, 101 P.3d 1257 [2004]).

Although not entirely clear, the district court's judgment and the parties' arguments seem to be based on one of two legal conclusions: (1) most of the jail credit the district court held Spight should receive (696 days of it) was credited toward Spight's postrelease supervision period in case No. 02 CR 2049, so he cannot have double credit in case No. 09 CR 2051; or (2) Spight was not entitled to credit for the time between July 23, 2009, and June 18, 2011, because he was not being held in jail solely on account of the charge in case No. 09 CR 2051. These are distinct legal concepts. The warden seems to interchangeably discuss them as one. For example, he argues, "the credit may only be applied once. . . . KDOC complied with the sentencing court's order [that Spight not receive duplicate credit] and did not award the jail credit in his most recent conviction until the prior sentence expired." These alternative legal bases for the district court's judgment are addressed in turn.

In support of the contention that Spight received most of the 720 days of jail credit he was awarded toward his postrelease supervision period in case No. 02 CR 2049, the warden submitted several KDOC documents. It appears these documents were prepared by someone with the KDOC to calculate how long Spight would remain in prison when he first arrived there in August 2010. We cannot tell if those documents were provided to, reviewed, or discussed with Spight. Regardless, the documents reveal only that Spight

8

was discharged from postrelease supervision in case No. 02 CR 2049 on June 18, 2011. The KDOC then used that date as Spight's sentence begins date, effectively crediting him for the 24 days he spent in custody between that date and his July 12, 2011, sentencing. The warden has never explained how Spight could receive jail credit toward a postrelease supervision period that had ended 24 days before that credit was calculated. As explained below, our caselaw suggests that any holding that Spight was serving postrelease supervision while in custody in case No. 09 CR 2051 would be a legal fallacy. Moreover, a close review of other KDOC documents reveal that the 158 days of good time credit Spight earned toward that postrelease supervision period from sources other than his incarceration was the *only* credit applied to move up his scheduled discharge date from November 26, 2011, to June 18, 2011.

This leaves us with the second contention, *i.e.*, that Spight was not entitled to jail credit for the 696 days between July 23, 2009, and June 18, 2011, because he was on postrelease supervision at the time. This seems to be the basis of the district court's decision when it states, "post-release supervision and the sentence imposed cannot be satisfied at the same time."

Indeed, our courts consistently recognize that postrelease supervision cannot be satisfied at the same time as incarceration. As one panel of this court noted, to hold otherwise would be "fundamentally illogical" because by statute, "postrelease supervision" means "'the release of a prisoner to the community after having served a period of imprisonment.' K.S.A. 21-4703(p)" (now K.S.A. 2014 Supp. 21- 6803[p]). *White v. Bruce*, 23 Kan. App. 2d 449, 452, 932 P.2d 448, *rev. denied* 262 Kan. 969 (1997). So "[o]bviously, an individual who has been reincarcerated is no longer released to the community as contemplated by K.S.A. 21-4703(p)." 23 Kan. App. 2d at 452.

This concept seems to support rather than hinder Spight's position. The warden acknowledges that following the holding in *White*, if Spight had still been on postrelease

9

supervision when he was sentenced on July 12, 2011, then the earlier post-release would have been tolled until the new sentence had been served. See 23 Kan. App. 2d 449, Syl. ¶ 2. However, the warden suggests a different result is warranted where, as here, the postrelease supervision period is allowed to expire and the defendant is discharged from that sentence. In support, the warden focuses upon the language of K.S.A. 2014 Supp. 21-6606(c) which provides that when a person on postrelease supervision is convicted *and sentenced* of a new crime, the court must order the sentences to run consecutively. According to the warden, "because [Spight] was not convicted and sentenced until after his earlier sentence expired, that portion of *White* and the interpretation does not apply."

The warden's argument misses the other key point of this court's holding in *White*: that the postrelease supervision period stops or suspends when a defendant is no longer released in the community. That happened in Spight's case when he was jailed on July 23, 2009, on the charges in case No. 09 CR 2051. It remained that way up until his sentencing in that case on July 12, 2011. See *State v. Jackson*, No. 109,473, 2014 WL 3397172 (Kan. App. 2014) (unpublished opinion) (citing *White*, 23 Kan. App. 2d 449, Syl. ¶ 2, in recognizing "a defendant on postrelease supervision cannot receive credit for [postrelease] supervision when incarcerated on another charge *when that charge results in a conviction and sentence*" [Emphasis added.]). No action was ever taken in regard to a violation of postrelease supervision. Spight was not being held for any matters pertaining to case No. 02 CR 2049. For the time period in question, Spight was legally held only on the charges in case No. 09 CR 2051. Consequently, he is entitled to the full 720 days of jail credit in that case.

Granted, there is some indication in the record that the KDOC may have considered Spight to be still serving his postrelease supervision during this time period. For example, it awarded him 90 days of good time credit toward his postrelease supervision period between October 11, 2009, and April 11, 2010. The warden indicated in a pleading below that there is an "exception" to the holding in *White* that when

10

someone on postrelease supervision is incarcerated on a new charge, the period of postrelease is stayed pending disposition on the new charge. Specifically, the warden stated: "The exception to this interpretation occurs when the post release period expires prior to sentencing for the new charge. If that occurs, the post release is allowed to expire because KDOC does not know the sentence the court will impose, if any. That is the case with [Spight.]" The warden cited no authority for this "exception" and none was found in our statutes or the caselaw.

Regardless of what the KDOC thought, by law Spight could not have legally been serving his postrelease supervision period in case No. 02 CR 2409 during the 720 days he spent in custody between July 23, 2009, and July 12, 2011, and he was not being held on any proceedings in case No. 02 CR 2409. In all events, the KDOC allowed the postrelease supervision to expire without the application of the 720 days of jail credit toward Spight's postrelease supervision.

We hold that the district court erred in concluding that Spight is not entitled to the full 720 days of jail credit he was awarded in case No. 09 CR 2051 and that such credit was attributable solely to that case. The KDOC, therefore, miscalculated his sentence in case No. 09 CR 2051. Accordingly, Spight is entitled to habeas relief under K.S.A. 60-1501.

Reversed and remanded with directions for the KDOC to recalculate Spight's sentence in case No. 09 CR 2051 with the full 720 days of jail credit he was awarded in that case.