(18 P.3d 247)
No. 84,571

DON A. MUIR, *Appellant*, v. LOUIS A. BRUCE, *et al.*, *Appellees.*

Opinion filed January 12, 2001.

*Sam Kepfield* and *Cheryl I. Allen*, of Legal Services for Prisoners, Inc., for appellant.

*Jon D. Graves*, special assistant attorney general, for appellee.

Before MARQUARDT, P.J., GREEN, J., and BUCHELE, S.J.

GREEN, J.: Don Muir appeals from a judgment of the trial court denying his K.S.A. 1999 Supp. 60-1501 petition. On appeal, Muir contends that the trial court erred in failing to determine that the Kansas Department of Corrections (DOC) had improperly forfeited his good time credits. We disagree and affirm.

Muir was originally sentenced to 13 months in custody of the DOC in case No. 94 CR 569. He was placed on postrelease supervision on March 1, 1996, with a maximum release date of May 12, 1997. In June of 1996, Muir committed a series of burglaries for which he received a new controlling sentence of 33 months in

custody. In May 1997, Muir's postrelease supervision was formally revoked, and he was ordered to serve to his sentence discharge date.

Muir was sentenced to 33 months on the new convictions on December 9, 1996, and had a beginning sentence date of September 6, 1996, after receiving 94 days of jail credit. He also still owed 8 months and 6 days on his previous sentence (9/6/96 to 5/12/97), for a combined total of 3 years, 5 months, and 6 days. The guidelines release date was listed as February 12, 2000, with 2 years' postrelease supervision, making his discharge date February 12, 2002.

Although Muir's controlling sentence was 33 months, he could have earned up to 4 months and 29 days of good time, resulting in 28 months and 1 day of time to serve on the new sentence. As listed on the sentence computation worksheet, Muir's estimated guidelines release date on the new sentence was January 7, 1999. Adding 8 months and 6 days for the remainder of Muir's previous sentence brought the estimated guidelines release date to September 13, 1999.

In June 1999, Muir received a disciplinary report for a violation of K.A.R. 44-12-901, dangerous contraband, and was found guilty. As a result, 3 months of good time were forfeited, which moved Muir's estimated release date on the old and new term to December 19, 1999. Muir was released from custody on December 17, 1999.

Muir filed a petition under K.S.A. 1999 Supp. 60-1501 in October 1999, alleging his 3 months of good time was illegally forfeited, causing him to be restrained past his release date of September 13, 1999. In his memorandum in support of his petition, Muir argued the DOC cannot forfeit good time earned on his new sentence when he was serving only the balance of his postrelease time under an order from the Kansas Parole Board. The trial court heard the petition on October 26, 1999. The trial court determined that the sentence of the hearing officer forfeiting 3 months of good time from Muir was a legal order.

First, we must decide if Muir's appeal is moot. Muir was released from custody on December 17, 1999. The good time taken from

him as a result of his disciplinary violation has been served. By statute, any remaining good time not forfeited is added to post-release supervision. K.S.A. 1999 Supp. 21-4722(b). Thus, Muir's final discharge date remains February 12, 2002, regardless of how we decide this issue. Further, the consequences Muir would face if he were to later violate the conditions of his postrelease supervision would not be influenced by a decision in this appeal. Muir would still be subject to serving the entire remaining balance of that period. K.S.A. 1999 Supp. 75-5217(c). Because the actual controversy in this case has ended, any judgment by this court would be an idle act insofar as Muir's rights are concerned. See *Shanks v. Nelson*, 258 Kan. 688, 693, 907 P.2d 882 (1995).

However, this case warrants an exception to the general rule regarding appellate review of moot issues because it involves a question of interest likely to recur that needs to be clarified and addressed by this court. See *Junction City Education Ass'n v. U.S.D. No. 475*, 264 Kan. 212, 215, 955 P.2d 1266 (1998). Where a particular issue, although moot, is one of public importance and one capable of repetition, an appellate court may consider that issue and render an opinion. *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, 504, 912 P.2d 716 (1996); *State v. Zimmer*, 19 Kan. App. 2d 617, Syl. ¶ 2, 873 P.2d 1381 (1994). Notwithstanding the issue of mootness, Muir's argument is fatally flawed. Our standard of review for the issue regarding good time forfeiture is as follows:

"The interpretation of a statute by an administrative agency charged with the responsibility of enforcing a statute is entitled to judicial deference and is called the doctrine of operative construction. Deference to an agency's interpretation is particularly appropriate when the agency is one of special competence and experience. Although an appellate court gives deference to the agency's interpretation of a statute, the final construction of a statute lies with the appellate court, and the agency's interpretation, while persuasive, is not binding on the court. Interpretation of a statute is a question of law over which an appellate court's review is unlimited. [Citation omitted.]" *In re Appeal of United Teleservices, Inc.*, 267 Kan. 570, 572, 983 P.2d 250 (1999).

Muir argues the DOC cannot forfeit his good time if the forfeiture was imposed during the time frame when he was serving the

remainder of his postrelease time on his old crime. Muir's estimated guidelines release date on his new crime was January 7, 1999. The disciplinary violation occurred in June 1999, while Muir was serving the remainder of his sentence from his previous crime, which was not subject to reduction through the application of good time. See Sentencing Guidelines Directive # 32A (February 8, 1995). See also K.S.A. 1999 Supp. 75-5217(c) (upon revocation Muir would be required to serve the entire remaining balance of the period of his postrelease supervision).

We must initially decide which sentence Muir served first. K.S.A. 21-4608(c) states Muir shall serve his sentence on his new crime consecutive to the remainder of his postrelease term. Likewise, Sentencing Guidelines Directive # 37, dated April 21, 1999, states that upon revocation, any remaining period of postrelease supervision must be served before the commencement of the new sentence.

Nevertheless, the trial court determined that Muir was to first serve his new sentence, then his postrelease time remaining on his old sentence. Although K.S.A. 21-4608(c) seems to say otherwise, this position is consistent with the sentence computation worksheet and is the only logical conclusion. Muir's parole was not formally revoked until May 1997, 8 months after his sentence beginning date. Thus, the only sentence he could have been serving before this date was the 33-month sentence on his new conviction.

This interpretation also seems to be consistent with the dicta in *White v. Bruce*, 23 Kan. App. 2d 449, 454-55, 932 P.2d 448, *rev. denied* 262 Kan. 970 (1997). In *White*, much like the case before this court, defendant's postrelease supervision was not revoked until 7 months after he began serving his prison sentence on his new crime. The court held the 7 months spent incarcerated on the new crime, before revocation, did not also vest as credit against his postrelease supervision term. In so finding, the court, in adopting the rationale of *Zerbst v. Kidwell*, 304 U.S. 359, 82 L.Ed. 1399, 58 S.Ct. 872 (1938), implied a prisoner's postrelease sentence, when parole was not revoked until after imposition of his new sentence, is to be served at the completion of the new sentence. See *White*, 23 Kan. App. at 454-55 (*Zerbst* court held inmates' original sen-

tences, of which they were on parole, were suspended until completion of their new sentences. 304 U.S. at 362).

Sentencing Guidelines Directive # 32A states that upon revocation of an inmate's postrelease supervision, the new sentence shall be aggregated with the balance of the time remaining on postrelease supervision to establish the time to serve on the aggregate sentence. Although the sentence calculation worksheet shows the separate nature of the two sentences, this may have been done for the ease of calculating Muir's sentence. January 7, 1999, was the estimated release date on the new sentence. September 13, 1999, was the estimated release date on the old and new term.

Accepting Muir's argument that the two sentences are separate and distinct, we would reach an illogical result. According to Muir, once he has served the amount of time necessary to satisfy the new portion of his imprisonment, he would be able to commit all the disciplinary violations he wished because no good time could be forfeited. If the two sentences really were separate and distinct, Muir would have been released from prison on January 7, 1999, assuming he earned all of his good time, been placed on postrelease supervision for 2 years plus the amount of good time he earned, and then put back in prison to serve the remaining 8 months and 6 days from his old conviction. Of course, when prisoners are ordered to serve consecutive sentences, they are not released after the completion of one sentence to postrelease supervision then reincarcerated later to complete the other sentence. The sentences are aggregated, and the good time is subtracted at the end from the guidelines release date.

Although Muir was technically serving the remainder of his postrelease time from his old conviction when he committed the disciplinary violation, sentences are aggregated for the purposes of determining the total length of term, guidelines release date, and final discharge date. His guidelines release date was February 12, 2002. If Muir was awarded all of his available good time and none was forfeited, he would have been released on September 13, 1999. Had Muir committed a disciplinary violation before earning good time credits, nothing could be forfeited and his estimated release date would not have been affected. K.A.R. 44-6-125(c). However,

at the time Muir committed the disciplinary violation, he had clearly earned 4 months and 29 days of good time. As a result, the DOC was within its rights to subtract 3 months of Muir's good time credit previously earned on his sentence.

Affirmed.