No. 90,558

MANFORD COOPER, *Appellee,* v. ROGER WERHOLTZ, *Appellant.*
(83 P.3d 1212)

Opinion filed January 30, 2004.

*Kenneth R. Smith,* special assistant attorney general, was on the brief for appellant.

*Charles J. Cavenee,* of Legal Services for Prisoners, Inc., was on the brief for appellee.

The opinion was delivered by

LUCKERT, J.: In 1988, Manford Cooper was convicted of a single class A felony and received a life sentence, which was tripled pursuant to the Habitual Criminal Act, K.S.A. 1986 Supp. 21-4504. The Department of Corrections (DOC) informed Cooper, an inmate at the Lansing Correctional Facility, that he would be eligible for parole in October 2002, at which time he would have served 15 years of imprisonment. Later, DOC advised Cooper his parole eligibility was changed from 15 to 45 years. Cooper filed a petition

for a writ of habeas corpus under K.S.A. 2002 Supp. 60-1501 after exhausting his administrative remedies.

The district court initially denied Cooper's request for relief, but upon reconsideration, granted the petition. The Secretary of Corrections appeals. The case was transferred to this court on the court's own motion pursuant to K.S.A. 20-3018(c).

The overarching issue for our determination is whether Cooper, whose life sentence was tripled under the Habitual Criminal Act, K.S.A. 1986 Supp. 21-4504, is eligible for parole under K.S.A. 1986 Supp. 22-3717 after serving 15 years, or whether by operation of K.S.A. 1986 Supp. 21-4504 he must serve three consecutive 15-year periods before becoming parole eligible.

Before reaching this issue, however, we must consider the Secretary's argument that the district court erroneously applied the current version of the statute which specifies the time frame for parole eligibility, K.S.A. 2002 Supp. 22-3717, and retroactively applied the 1993 amendments to 22-3717(b)(3).

The Secretary is correct that the outcome of this case is governed by the statutes in effect at the time the crime of conviction was committed. See *State v. Martin*, 270 Kan. 603, 605, 17 P.3d 344 (2001) ("Criminal statutes and penalties in effect at the time of the criminal act are controlling.") However, the district court did not disregard this rule, but stated that the current statute was essentially the same as previous versions of the statute. In this case, the crime of conviction was committed in January 1987, and the parole eligibility statute in effect at that time, K.S.A. 1986 Supp. 22-3717, provided:

"(b) An inmate sentenced for a class A felony, including an inmate sentenced pursuant to K.S.A 21-4618 and amendments thereto, shall be eligible for parole after serving 15 years of confinement, without deduction of any good time credits.

"(c) Except as provided in subsection (d), if an inmate is sentenced to imprisonment for more than one crime and the sentences run consecutively, the inmate shall be eligible for parole after serving the total of

(1) The aggregate minimum sentences, . . . and

(2) an additional 15 years, without deduction of good time credits, for each crime which is a class A felony."

The current version, K.S.A. 2002 Supp. 22-3717, which the district court quoted, states:

"(b) . . . (3) Except as provided by K.S.A. 1993 Supp. 21-4628 [hard 40] prior to its repeal, an inmate sentenced for a class A felony committed before July 1, 1993, including an inmate sentenced pursuant to K.S.A. 21-4618 and amendments thereto, shall be eligible for parole after serving 15 years of confinement, without deduction of any good time credits.

. . . .

"(c) Except as provided in subsection (e), if an inmate is sentenced to imprisonment for more than one crime and the sentences run consecutively, the inmate shall be eligible for parole after serving the total of:

(1) The aggregate minimum sentence, as determined pursuant to K.S.A. 21-4608 and amendments thereto, less good time credits for those crimes which are not class A felonies; and

(2) an additional 15 years, without deduction for good time credits, for each crime which is a class A felony."

Comparison of the two versions of the statute reveals the accuracy of the trial court's conclusion that the current statute is "essentially the same language" as that found in the 1986 version of the statute. Thus, although the statute which controls is that which was in effect at the time Cooper committed the crime of conviction, we are not faced with an issue of whether subsequent amendments affected the time of Cooper's parole eligibility. Consequently, we need not consider an issue regarding retroactivity.

Rather, we must determine whether the district court's interpretation of the language of the statute was erroneous. In doing so, our standard of review is unlimited. Interpretation of a statute is a question of law over which appellate courts exercise unlimited review. *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003). Additionally, in cases involving habeas corpus relief pursuant to K.S.A. 2002 Supp. 60-1501, an appellate court's review of the district court's conclusions of law is unlimited. *Darnell v. Simmons*, 30 Kan. App. 2d 778, 780, 48 P.3d 1278 (2002).

This court and the district court's interpretation of the statute must occur within the parameters of well-established rules.

"It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. Stated another way,

when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in it." *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 378, 22 P.3d 124 (2001) (citing *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 [1998]).

We agree with Cooper's argument and the district court's conclusion that the language of K.S.A. 1986 Supp. 22-3717(b) is plain and unambiguous. The statute provides in relevant part: "An inmate sentenced for a class A felony . . . shall be eligible for parole after serving 15 years of confinement . . . ." K.S.A. 1986 Supp. 22-3717(b). Aggregation of sentences occurs only "if an inmate is sentenced to imprisonment for *more than one crime.*" (Emphasis added.) K.S.A. 1986 Supp. 22-3717(c). An additional 15 years is imposed "for *each* crime which is a class A felony." (Emphasis added.) K.S.A. 1986 Supp. 22-3717(c)(2). Cooper committed one crime and is eligible for parole after serving 15 years. Additional periods are not imposed because Cooper did not commit more than one crime.

The Secretary also argues that K.S.A. 1986 Supp. 22-3717 and K.S.A. 1986 Supp. 21-4504 operated *in pari materia* and that Cooper's suggested interpretation of 22-3717 would implicitly repeal 21-4504. K.S.A. 1986 Supp. 21-4504(b) provided:

"(b) If a defendant is convicted of a felony a third or subsequent time, the trial judge shall sentence the defendant as follows, upon motion of the prosecuting attorney:

"(1) The court shall fix a minimum sentence of not less than the greatest nor more than three times the greatest minimum sentence authorized by K.S.A. 21-4501 and amendments thereto, for the crime for which the defendant is convicted; and

"(2) the court may fix a maximum sentence of not less than the least nor more than three times the greatest maximum sentence provided by K.S.A. 21-4501 and amendments thereto, for the crime."

In essence, the Secretary seeks to treat the parole eligibility period as if it had been announced as a minimum sentence under subsection (1). However, as we have explained in the past: "The term for a class A felony is imprisonment for life, which is not an indeterminate sentence. . . . [A] class A felony has no maximum or minimum that can be set by the court." *State v. Van Winkle,*

256 Kan. 890, 899, 889 P.2d 749 (1995). Hence, the tripling of a life sentence does not fall squarely within the terms of the statute. Despite this, we have recognized that K.S.A. 21-4504 (and its relevant predecessors) gives the sentencing court the authority to double or triple the life sentence of a habitual violator. See *State v. Sanders*, 263 Kan. 317, 328, 949 P.2d 1084 (1997); *State v. Patterson*, 257 Kan. 824, 896 P.2d 1056 (1995); *State v. Baker*, 237 Kan. 54, 56-57, 697 P.2d 1267 (1985); *State v. Beasley*, 205 Kan. 253, 469 P.2d 453 (1970), *cert. denied* 401 U.S. 919 (1971).

The Secretary relies upon *Sanders*, arguing that in that decision this court recognized that tripling a life sentence under the Habitual Criminal Act would lengthen the time an inmate must serve before being parole eligible. In *Sanders*, the court restated the defendant's argument that the imposition of consecutive life sentences under the Habitual Criminal Act was "illegal because its only purpose is to push back his parole eligibility date." 263 Kan. at 328. The court did not resolve the issue now before us because the court determined that even if the defendant's argument were true, the sentence was not illegal. The court simply noted that in *Baker* and *Beasley* the court upheld the enhancement of a life sentence under K.S.A. 21-4504, and in *State v. Evans*, 251 Kan. 132, 141, 834 P.2d 335 (1992), "dismissed a similar argument regarding the alleged illegality of enhancing a sentence to postpone parole eligibility." *Sanders*, 263 Kan. at 328.

Although in *Patterson* the court concluded that "the result of the district court's invoking the habitual criminal provision of 21-4504 to defendant's life sentence of first-degree murder is to impose three consecutive life sentences," 257 Kan. at 829, the court also noted: "A life sentence enhanced by application of the habitual criminal provision remains a single sentence for a single offense." 257 Kan. at 827. Applying this conclusion to the plain language of K.S.A. 1986 Supp. 22-3717, Cooper committed a single class A felony and he is parole eligible after serving 15 years of imprisonment. The Habitual Criminal Act does not change the effect of K.S.A. 1986 Supp. 22-3717, which is specific to the determination of parole eligibility.

Additionally, the Secretary argues that the Secretary's interpretation of the statutes is entitled to considerable weight since there is not a controlling appellate decision. See *Muir v. Bruce*, 28 Kan. App. 2d 482, Syl. ¶ 1, 18 P.3d 247 (2001). The doctrine of operative construction provides that the interpretation of a statute by an administrative agency charged with the responsibility of enforcing it is entitled to judicial deference. However, an agency's interpretation of a statute is not conclusive or binding on the courts. *GT, Kansas, L.L.C. v. Riley County Register of Deeds*, 271 Kan. 311, 317, 22 P.3d 600 (2001).

The Secretary asks us to apply the doctrine and defer to the DOC's interpretation and conclusion that Cooper was not parole eligible until he had served 45 years. As we have previously noted, the Secretary's interpretation is contrary to the plain language of K.S.A. 1986 Supp. 22-3717, which provides that Cooper is eligible for parole after having served 15 years of imprisonment.

In granting relief on the motion for reconsideration, the district court implicitly applied the doctrine of operative construction against the Secretary by relying upon a regulation promulgated by the DOC. K.A.R. 44-6-112 (1984) provided: "(d) Those sentences imposed under the 'habitual criminal act,' K.S.A. 21-4504, and which have a minimum sentence of 15 years or more, shall have a parole eligibility fixed at 15 years." The Secretary accurately points out that the regulation relied upon by the district court did not apply to Cooper's case. The heading of K.A.R. 44-6-112 (1984) stated that it applied to parole eligibility computation for "crimes between January 1979 and July 1982, including aid and abet after July 1981." Cooper committed his offense in January 1987; therefore, this regulation did not apply to him.

The regulation which actually applied to Cooper was K.A.R. 44-6-114 (1984); it governed parole eligibility computation for crimes committed after July 1982. K.A.R. 44-6-114(a) provided that "[a]ny class A felony sentence . . . shall have a fixed parole eligibility date of 15 years." The regulation also provided that if an inmate had consecutive sentences for one or more class A felonies, an additional 15 years should be added for each class A felony. K.A.R. 44-6-114(c)(1). The regulation makes no mention of the Habitual

Criminal Act. However, it is persuasive that the agency's regulation for a different time period when the statutory scheme was essentially the same would require the same result we reach here. We hold that under the plain and unambiguous language of K.S.A. 1986 Supp. 22-3717, Cooper is parole eligible after serving 15 years.

Affirmed.