NOT DESIGNATED FOR PUBLICATION

No. 119,144

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARVIN B. DAVIS JR.,
*Appellant*,

v.

SAM CLINE, WARDEN, et al.,
*Appellees.*

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed October 12, 2018. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Sherri Price*, legal counsel and special assistant attorney general, of Lansing Correctional Facility, for appellees.

Before BUSER, P.J., ATCHESON, J., and WALKER, S.J.

PER CURIAM: This is an appeal by Marvin B. Davis Jr. of the dismissal of his petition for writ of habeas corpus brought under K.S.A. 60-1501. Davis contends the Kansas Department of Corrections (KDOC) violated his due process rights by aggregating the sentences from two criminal cases. Finding no error, we affirm the district court.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 1996, Davis was convicted in Sedgwick County in case 96 CR 2192 (1996 case). After serving the incarceration portion of the sentence, the KDOC released Davis to begin serving a period of postrelease supervision. While on postrelease supervision, Davis committed a new offense. As a result, he pled no contest to the crime of attempted offender registration violation in Sedgwick County in case 15 CR 2657 (2015 case). Upon his conviction in the 2015 case, Davis was sentenced to 19 months in prison followed by 12 months' postrelease supervision. This new sentence was ordered to run consecutive to the sentence imposed in the 1996 case. The district court awarded Davis 350 days of jail credit for the time he spent incarcerated awaiting disposition in the 2015 case. Under terms of the new sentence, Davis had the opportunity to earn good time credits to reduce his imprisonment by 20 percent.

About four months after being sentenced in the 2015 case, the Kansas Prisoner Review Board (KPRB) revoked Davis' postrelease supervision status in the 1996 case and ordered his reincarceration to serve a fixed term of imprisonment. The KDOC aggregated Davis' sentence imposed in the 2015 case (19 months) with the term of imprisonment imposed by the KPRB upon the revocation of his postrelease supervision in the 1996 case (32 months and 29 days). After aggregation, the two sentences combined for a controlling sentence of 51 months and 29 days. The KDOC then subtracted the 350 days of jail credit granted in the 2015 case from the aggregated sentence to reduce the length of Davis' imprisonment on the controlling aggregated sentence.

Davis filed a grievance with the KDOC claiming it illegally computed his sentence and that, given all jail credit and earned good time credits, he should have been discharged from his 2015 sentence on December 17, 2016. The KDOC denied Davis' request for relief stating that the sentence calculation was correct because his aggregated

2

sentence did not allow release until September 16, 2019, at the earliest. Davis appealed this decision to the warden, Sam Cline, and the Secretary of Corrections to no avail.

Davis filed a petition for writ of habeas corpus under K.S.A. 60-1501 contending the KDOC violated his due process rights by aggregating the two sentences. At the hearing on his motion, Davis appeared pro se by telephone. He asserted the KDOC's records showed that he would first serve the remainder of his postrelease supervision in the 1996 case and, after completion, he would begin serving his sentence in the 2015 case. Davis explained that the proper chronology should be that he first complete the sentence in the 2015 case before serving the remainder of his postrelease supervision in the 1996 case. Because of this reverse order, Davis asserted the KDOC wrongly applied the 350 days of jail credit towards the previous sentence instead of the new sentence. The district court took the matter under advisement.

The district court issued its memorandum decision on October 27, 2017. Relying on *Muir v. Bruce*, 28 Kan. App. 2d 482, 18 P.3d 247 (2001), the district court found that Davis did not meet the burden of proof to establish that his sentence was miscalculated or that his due process rights were violated. Accordingly, the district court dismissed the K.S.A. 60-1501 motion. Davis filed a motion to alter or amend the judgment which was also denied. He filed a timely notice of appeal to our court.

ANALYSIS

We begin the analysis by stating our standard of review which is agreed upon by both parties. An appellate court reviews a district court's decision on a K.S.A. 60-1501 petition to determine whether the district court's factual findings are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. The district court's conclusions of law are subject to de novo review. *Rice v. State*, 278 Kan. 309, 320, 95 P.3d 994 (2004); *Hooks v. State*, 51 Kan. App. 2d 527, 530, 349

3

P.3d 476 (2015). Additionally, to the extent an appellate issue requires interpretation of the Kansas Sentencing Guidelines statutes, such review is a question of law under which appellate courts have unlimited review. *State v. Nguyen*, 304 Kan. 420, 422, 372 P.3d 1142 (2016)

To state a claim for relief under K.S.A. 60-1501, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). "[I]f, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists," then dismissal is proper. 289 Kan. at 648-49; see K.S.A. 2017 Supp. 60-1503(a).

At the outset, Davis' petition and brief on appeal are unclear and inconsistent with each other regarding the specifics of his due process claim. In his petition, Davis asserted, "said imprisonment is wrongful due to deliberate and willful miscalculation of sentence." In the petition, Davis contended the KDOC ordered him to serve and complete the remainder of his postrelease supervision term prior to serving the sentence on the 2015 case. Davis claimed the KDOC then applied the 350 day jail credit to the postrelease supervision portion, rather than the new sentence. Although at the hearing Davis did not specifically identify any documentation to support his allegation, he stated the "statement of the records themselves" showed that Davis would continue serving his postrelease revocation term before beginning to serve his new sentence, which, in his estimation, violated *White v. Bruce*, 23 Kan. App. 2d 449, 932 P.2d 448 (1997).

On appeal, Davis still relies on *White*, but he frames the issue differently than he did in his petition. On appeal, Davis claims that instead of suspending his postrelease supervision, the KDOC illegally aggregated the remaining portion of his postrelease supervision with his sentence in the 2015 case and then further erred in applying his jail

4

credit towards that aggregated sentence. Davis also asserts that, upon the application of jail credit and earned good time credits, he completed the sentence in the 2015 case and, as a result, there is no sentence left to aggregate with the postrelease supervision term of imprisonment.

In response, Cline asserts that Davis' complaints are based on the fact that he received an aggregated sentence instead of being discharged from one sentence to serve another. Cline argues that *Muir* specifically holds that when prisoners are ordered to serve consecutive sentences, they are not released from one sentence to serve a term of postrelease supervision and then reincarcerated later to complete the other sentence. Cline also argues that, despite Davis' claims, his due process rights were not impacted because he received the full 350 days of jail credit ordered by the district court in the 2015 case.

Under K.S.A. 2017 Supp. 21-6606(c), a person convicted of a new crime while on postrelease supervision shall first serve the remaining postrelease supervision term and then serve the new sentence consecutively. However, past appellate courts have applied this statute differently when the postrelease supervision term had not been revoked prior to imposition of the new sentence.

In *White*, our court discussed whether jail credit for time spent incarcerated for another crime may be applied towards an unrevoked postrelease supervision term. White committed a new crime while on postrelease supervision and served seven months incarceration awaiting disposition of the new crime. Because his postrelease supervision had not yet been revoked, White argued that he could attribute those seven months to his postrelease supervision term.

Our court determined that once a person is reincarcerated, they are no longer considered "released to the community" as described by the postrelease supervision statute. 23 Kan. App. 2d at 452. We reasoned that incarceration and postrelease

5

supervision are mutually exclusive sentencing concepts that cannot be satisfied at the same time, thus, "an inmate cannot logically remain on postrelease supervision if that inmate is incarcerated." 23 Kan. App. 2d at 453. Our court determined that even though the parole board had not yet revoked White's postrelease supervision, White was no longer serving his postrelease supervision term and the time spent in prison could not vest as credit against his postrelease supervision term. Finally, our court found that an individual shall continue to serve the new sentence first and the postrelease supervision status will be suspended until the new sentence is completed. 23 Kan. App. 2d at 455. In summary, *White* stands for the proposition that an individual may not receive jail credit against both the new sentence and postrelease supervision, and any awarded jail credit will count towards the new sentence. In the case on appeal, the record is clear that the KDOC applied 350 days of jail credit, and this credit was not duplicative.

From his appellant's brief, it appears that Davis' primary concern relates to the KDOC's use of the term "aggregating." Davis argues that in aggregating the two sentences, the KDOC applied the 350 days of jail credit to the sentence in the 1996 case, rather than the 2015 case. Davis contends that, under *White*, sentences may not be aggregated. However, *White* does not address aggregation, it only holds that time served in prison should be counted towards the new sentence and may not be credited towards an unrevoked postrelease supervision term.

The district court relied on *Muir* in ruling that aggregating Davis' sentences did not violate his due process rights. Davis asserts that *White* and *Muir* are contradictory and that the district court erred as a matter of law in relying on our court's opinion in *Muir* which he characterizes as "an outlier."

In *Muir*, our court held that, despite the language of K.S.A. 21-4608(c)—the predecessor to K.S.A. 2017 Supp. 21-6606(c), upon postrelease supervision revocation, the defendant shall finish serving his or her new sentence before serving the remaining

6

postrelease supervision term. 28 Kan. App. 2d at 486. Thus, a postrelease supervision term is suspended while the defendant is incarcerated for a new crime. In our view, *Muir* and *White* do not conflict but complement each other. *Muir* specifically provides that its interpretation of the issue is consistent with the *White* holding that when a prisoner's postrelease supervision is revoked after a new sentence is imposed, the defendant should serve the new sentence first followed by the remaining postrelease supervision term. *Muir*, 28 Kan. App. 2d at 485-86.

Of particular relevance to the case on appeal, *Muir* also discussed a Kansas sentencing guidelines directive that required the new sentence to be aggregated with time remaining on the postrelease supervision sentence to establish the overall controlling sentence to be served. 28 Kan. App. 2d at 486. As we explained, sentences are aggregated in order to determine the total length of the term, guideline release dates, and final discharge dates. 28 Kan. App. 2d at 486. The *Muir* court held that "when prisoners are ordered to serve consecutive sentences, they are not released after the completion of one sentence to postrelease supervision then reincarcerated later to complete the other sentence. The sentences are aggregated, and the good time is subtracted at the end from the guidelines release date." 28 Kan. App. 2d at 486.

According to both *Muir* and *White*, a defendant's postrelease supervision term is suspended while the defendant is serving a new sentence. Under *Muir*, the new sentence must be aggregated with the remaining postrelease supervision portion from the old sentence. Credits are then applied to that aggregated total. This also complies with K.A.R. 44-6-140a(b), which states: "To obtain the controlling guidelines release date for consecutive guidelines sentences, all prison portions of the terms shall be added, and the resulting sum of months shall be added to the sentence begins date."

*Muir*'s use of the term "aggregating" simply means that a prisoner will serve a continuous prison term when, as in this case, the defendant is ordered to serve two

consecutive prison sentences. Thus, upon Davis receiving jail credit and good time credits and completing his sentence in the 2015 case, he was mandated to serve the remaining portion of his postrelease supervision term in the 1996 case immediately thereafter. Contrary to Davis' assertion, under Kansas law and administrative guidelines, Davis may not be discharged from prison until he completes both sentences.

Finally, Davis claims for the first time on appeal the KDOC violated his due process rights by eliminating his ability to earn good time credits on his remaining postrelease supervision prison term. As pointed out by Cline, Davis did not raise this issue in the district court, nor on appeal does he invoke an exception to the general rule that issues not raised in the district court are generally not preserved for appellate review. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015); Kansas Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 34). In this regard, our Supreme Court has admonished that litigants need to comply with Supreme Court Rule 6.02(a)(5) "or risk a ruling that an issue improperly briefed will be deemed waived or abandoned." *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). We conclude this particular issue is waived.

We pause to note, however, that Davis' argument is not supported by Kansas law:

> "For offenders who are serving a sentencing guidelines sentence and whose postrelease supervision is revoked due to commission of a new crime, good time credits shall not be available to reduce the period of the incarceration penalty. Offenders whose postrelease supervision is revoked due to commission of a new felony shall serve the entire remaining balance of postrelease supervision in prison." K.A.R. 44-6-115c(c).

Davis is not eligible for good time credits to reduce the period of incarceration imposed due to the revocation of his postrelease supervision. However, Davis may receive up to 20 percent of good time credits awarded under the sentence imposed in the

2015 case. Thus, under K.A.R. 44-6-115c, the district court did not err in assessing the KDOC's handling of earned good time credits on the 2015 case.

In conclusion, we are persuaded that Davis' claim that KDOC willfully and deliberately miscalculated his aggregated sentence is not supported by Kansas law or the facts in the record. The district court found that Davis did not show that his sentence was improperly calculated or that his due process rights had been violated. We agree. The district court's factual findings are supported by substantial competent evidence and are sufficient to support the court's conclusions of law in dismissing the petition.

Affirmed.