NOT DESIGNATED FOR PUBLICATION

No. 124,360

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MITCHELL H. HARTFIELD,
*Appellant*,

v.

STATE OF KANSAS, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed August 19, 2022. Affirmed.

*Shannon S. Crane*, of Hutchinson, for appellant.

*Jon D. Graves*, legal counsel, Kansas Department of Corrections, of Hutchinson, for appellee.

Before ARNOLD-BURGER, C.J., MALONE and COBLE, JJ.

PER CURIAM: Mitchell H. Hartfield is serving a life sentence for the murder of Danny O'Day. Roughly 32 years after his conviction, Hartfield filed a K.S.A. 60-1501 petition alleging that the Kansas Department of Corrections (KDOC) had improperly calculated his parole eligibility date. KDOC agreed, properly calculated his date, and allowed him to go before the Kansas Prisoner Board of Review (Board) for consideration for parole. The district court subsequently dismissed Hartfield's petition as moot. On appeal, Hartfield argues that his claims are not moot and that the district court should have appointed an attorney to represent him. Finding no error, we affirm.

1

A jury convicted Hartfield of first-degree felony murder, a class A felony, aggravated burglary, a class A felony, and aggravated battery, a class C felony, in October 1987. On the murder charge, the district court sentenced him to life in prison but doubled that sentence under the Habitual Criminal Act, K.S.A. 1987 Supp. 21-4504. The district court sentenced him to an indeterminate sentence of 10 to 40 years for each of the two remaining felonies and ordered that he serve all sentences consecutively. The Kansas Supreme Court affirmed Hartfield's convictions in October 1989. *State v. Hartfield*, 245 Kan. 431, 781 P.2d 1050 (1989).

KDOC later transferred Hartfield to the Maryland Department of Corrections under the Interstate Corrections Compact. The record does not reveal when or why KDOC transferred Hartfield to Maryland or when he returned to Kansas, although the State does not appear to dispute that he was in Maryland for 14 years. It is also unclear when Hartfield discovered that KDOC had miscalculated his parole eligibility under Kansas law. But in August 2019, Hartfield filed a pro se petition for writ of habeas corpus in the Kansas Court of Appeals. He alleged then, as he alleges now, that he was eligible for parole after 15 years on the murder charge and 20 years after the aggregate minimum sentences on his other case—or 35 years.

Hartfield based his argument on the Kansas Supreme Court decision in *Cooper v. Werholtz*, 277 Kan. 250, Syl. ¶ 3, 83 P.3d 1212 (2004), in which the court held "[a] defendant who is convicted of only one class A felony is eligible for parole after 15 years even if serving a life sentence enhanced pursuant to the Habitual Criminal Act." Based on his calculations and a sentence begins date that does not appear to be in dispute of March 11, 1982, he argued that he was eligible for parole on March 11, 2017. But KDOC had his projected parole eligibility date as September 11, 2026. He submitted that he had been denied a chance to go before the Board because of the KDOC's and the sentencing court's

misapprehension of the statute. This court summarily dismissed Hartfield's petition two weeks later, finding Hartfield must first exhaust his administrative remedies in "the district court."

Thus began multiple attempts by Hartfield to get the staff at KDOC to consider his grievance. Hartfield submitted an emergency grievance through his housing unit in September 2019, which ended up being lost. Hartfield had a second copy, which he attached to a document labeled "Offender Request to Staff Member." Hartfield believed this document showed he tried to file an emergency grievance in late September.

Though he continued to request updates on his grievance, two months later a unit team manager informed Hartfield that he did not consider Hartfield's situation to be an emergency and that he forwarded the grievance to another unit team manager for investigation and response. Two weeks later, the new unit team manager wrote a letter to Hartfield detailing that he discussed Hartfield's issue with the KDOC "classifications department" and that the department determined there was no parole eligibility error.

On December 31, 2019, Hartfield filed a verified petition requesting that the Reno County District Court issue a writ of habeas corpus under K.S.A. 60-1501. He also filed a motion requesting that the court appoint an attorney to represent him. In his petition, Hartfield requested the district court order the KDOC to correct the computation of his sentence to reflect that he was immediately eligible for parole and to expedite a hearing with the Board. In the alternative, Hartfield asked the district court to order Respondent to bring Hartfield to court, order Respondent to show cause why the writ of habeas corpus should not be granted, and order a full evidentiary hearing to determine the facts.

After several continuances, the district court held a remote hearing in June 2020 at which Hartfield represented himself, and Jon D. Graves represented the State. At the beginning of the hearing, Graves informed the district court the classification department

recomputed Hartfield's sentence and agreed with Hartfield that he was now parole eligible. He also informed the court that the KDOC already granted Hartfield's request for an expedited parole hearing with the Board. Graves argued the KDOC did just as Hartfield asked and, therefore, the petition was moot because the district court could provide no further relief for Hartfield. Hartfield expressed he changed his request for relief and that he now wanted the district court to order his immediate release because he did not get the chance to take his case to the Board when he should have. The district court asked Hartfield for legal authority that would allow the court to order that relief. Hartfield was unsure what legal authority supported his request.

The district court dismissed Hartfield's petition as moot on June 25, 2020. Hartfield timely appealed to this court.

ANALYSIS

On appeal, Hartfield argues that the district court should have appointed him counsel to pursue his claims and that the court erred in finding his petition moot.

I.    THE DISTRICT COURT DID NOT ERR IN FAILING TO APPOINT HARTFIELD COUNSEL.

Hartfield argues the district court violated his due process rights when it held a hearing "in which substantive issues were argued by both sides and he did not have an attorney."

A.  *Our standard of review is unlimited.*

Whether K.S.A. 60-1501 provides for a petitioner's statutory right to appointed counsel is a question of law over which this court exercises unlimited review. See *Markovich v. Green*, 48 Kan. App. 2d 567, 569, 297 P.3d 1176 (2013).

4

B. *The district court is not required to appoint counsel in a K.S.A. 60-1501 action when no writ has issued, no responsive pleadings from the State have been filed or requested, and the court summarily dismisses the petitioner's claims.*

Generally, a plaintiff does not have a right to an appointed attorney in a civil case. Recently, the Kansas Supreme Court thoroughly explored the procedural posture of K.S.A. 60-1501 petitions and the district court's authority to address the claims within the petitions. See *Denney v. Norwood*, 315 Kan. 163, 172-73, 505 P.3d 730 (2022). We outline that procedure.

First, if the district court determines from the petition and attached exhibits that petitioner is entitled to no relief, it may summarily deny the petition without issuing a writ or ordering the respondent to answer the petition. 315 Kan. at 174.

Second, if the district court determines petitioner may have a right to relief, it must issue a writ, appoint counsel, order the respondent to answer the petition, and hold a hearing. 315 Kan. at 174. "Again, *once the court issues a writ*, . . . the statute merely requires the judge to proceed in a summary way to hear and determine the cause." (Emphasis added.) 315 Kan. at 174. So, contrary to Hartfield's assertions here, *Denney* did not hold a petitioner has a due process or statutory right to counsel in representing his or her petition to the district court. And it is only after the district court issues a writ that a petitioner's right to counsel arises. 315 Kan. at 173-74 ("If . . . the court finds petitioner may have a right to relief . . . the court must issue a writ of habeas corpus. If that happens, the court must appoint counsel to assist an indigent inmate. [Citations omitted.]").

The district court originally scheduled a hearing within a few weeks of Hartfield's petition arriving at the clerk's office. The court continued the case several times at the request of the State. Other than those continuance requests, no responsive pleadings were

5

ever filed by the State, nor did the district court order the State to do so. Instead, the State agreed Hartfield was parole eligible and that he should be allowed to go before the Board. Hartfield was able to go before the Board for a parole hearing as he requested.

Once the Board made its decision—passing him for three years, Hartfield's petition came before the district court for what the State called a "status conference." The State announced that it had given Hartfield everything he had asked for in his petition and the case was now moot. But the State advised the district court that Hartfield had just filed a "statement of prayer for relief" asking the district court to order his release. We note that Hatfield did not seek to amend his petition, the only legal filing before the court at that time.

For the first time, Hartfield argued that KDOC had violated his constitutional rights and that simply allowing him to see the Board was inadequate. Had he not been "systematically denied" his right to see the Board when he was first eligible he "would have been granted Parole years ago, and at a minimum, [he] would have been able to follow any recommendations the Kansas Parole Board might have made and still be released prior to now." He asserted that misapplying the statute to his disadvantage was "Patently Immoral and Shocking to the Conscience." The district judge agreed to look at this new document, titled "Closing Argument/Prayer for Relief" and enter a decision later after a full review. The court did not require the State to file any responsive pleadings. The State simply noted at the hearing that these new claims were not in Hartfield's petition, and it did not think the district court could order the Board to release Hartfield.

In its subsequent written decision, the district court noted it had taken "the matter under advisement in order to consider written arguments of the Plaintiff." The district court then stated Hartfield's new request for immediate release or an order to the Board for further hearings was not within the court's jurisdiction. And finally, the district court

held that Hartfield already received a remedy within the court's jurisdiction; therefore, the court dismissed the petition as moot.

The district court did not issue a writ, though it did hold a status conference in which it accepted a written document from Hartfield as well as argument from both Hartfield and the State's attorney, Graves. In *Denny*, the Supreme Court referred to this as a "preliminary habeas corpus hearing." 315 Kan. at 175. We find that the district court's actions here equated to a summary dismissal based on the record before it. The court did not require any responsive pleadings from the State; it did not hold an evidentiary hearing; and the court did not issue a writ. So under the direction our Supreme Court provided in *Denny*, Hartfield had no right to court-appointed counsel and the district court did not err in failing to appoint one. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017) (finding appellate courts duty-bound to follow precedent absent indication Kansas Supreme Court intends to depart from previous position).

II.     THE DISTRICT COURT DID NOT ERR IN FINDING THAT HARTFIELD'S CLAIMS WERE MOOT.

On appeal, Hartfield argues that his claims are not moot because he was also raising claims for the denial of due process and equal protection based on the systematic denial of his right to go before the Board promptly. As a result, he has a right to release, not just a recognition of parole eligibility and a hearing before the Board. Since the court did not grant him that relief, he argues that his claims are not moot.

### A. *Our standard of review is unlimited.*

Because mootness is a doctrine of court policy, which courts developed through precedent, appellate review of the issue is unlimited. *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020).

*B. Hartfield's K.S.A 60-1501 petition alleged his confinement was wrongful because KDOC had incorrectly calculated his parole eligibility date.*

Under K.S.A. 2021 Supp. 60-1501(a), any person who is "detained, confined or restrained of liberty on any pretense whatsoever" may petition for a writ of habeas corpus in the district court of the county where the person is constrained. The K.S.A. 2021 Supp. 60-1501 petition must be verified and state: (1) the place of and person responsible for the confinement; (2) the reason for the confinement; and (3) why that confinement is wrongful. K.S.A. 60-1502.

Though Hartfield's 60-1501 petition centered on his argument that his parole eligibility date was incorrect and as such he was entitled to the adjustment of the date and a hearing before the Board, his brief on appeal relies on his postpetition claims that KDOC violated his constitutional due process rights. He argues that the "KDOC systematically and intentionally violated his rights which resulted in him being unable to have a hearing in front of the prison parole board." As a result, he should be released.

*C. Hartfield was granted all the relief he requested; therefore, his petition is moot.*

Generally, Kansas appellate courts do not decide moot questions or render advisory opinions. The mootness doctrine is one of court policy, under which the court is to determine real controversies about the legal rights of persons and properties that are involved in the case properly before it and to adjudicate those rights in a way that is operative, final, and conclusive. *Roat*, 311 Kan. at 590. An appellate court will only dismiss as moot an issue on appeal if it can be convincingly shown that the actual controversy has ended, the only judgment that the court could enter would be ineffectual for any purpose, and the judgment would not impact any of the parties' rights. *Mundy v. State*, 307 Kan. 280, 288-89, 408 P.3d 965 (2018).

Here, the State bears the initial burden of establishing that the case is moot. Once established, the burden shifts to Hartfield to show a substantial interest that would be impaired by dismissal or that an exception to the mootness doctrine applies. See *Roat*, 311 Kan. at 593.

The district court dismissed Hartfield's petition as moot because Hartfield received everything he asked for in his grievances and petition—a corrected parole eligibility date and an expedited hearing with the Board. On appeal, he suggests that the issue is not moot because he asked the district court to find that KDOC violated his constitutional rights and to order his immediate release and it failed to do so. Because he did not receive everything he asked for, he argues the case is not moot.

But Hartfield never filed an amended petition asserting a constitutional claim mandating his release. The district court was not required to grant relief that Hartfield did not request in his petition or in his administrative grievances. The State provided the relief Hartfield requested in his pleadings.

Because Hartfield received the relief he asked for, there no longer exists a controversy between the parties and the only judgment this court could enter would be ineffectual for any purpose and would not impact any of the parties' rights. As a result, the State has met its burden to establish mootness. See *Mundy*, 307 Kan. at 288-89.

Thus, the burden of proof shifts to Hartfield to prove an exception to the prudential mootness doctrine applies. But Hartfield fails to make that argument on appeal. See *Roat*, 311 Kan. at 590. And review of the record suggests the exception does not apply because it is unlikely that the KDOC will again incorrectly compute Hartfield's eligibility date since it has already agreed Hartfield is currently eligible. And this specific situation is not one of public importance. It is confined to these facts. As a result, the district court did not err in finding that Hartfield's petition is moot.

Moreover, even if we were to consider his unpled claims, Hartfield does not challenge the decision of the Board to pass him for three years. And, under Kansas law, *parole eligibility* is not synonymous to *parole*. *Parker v. State*, 247 Kan. 214, 217, 795 P.2d 68 (1990) (holding that the "mere eligibility for parole does not entitle the prisoner to parole at the end of a minimum term").

"Neither the district court nor this court has authority to substitute its discretion for that of the paroling authority in granting parole. If error is found in the board's interpretation and application of statutes, the case must be remanded to the parole board with instructions to conduct a proper hearing pursuant to the applicable statutes and make the proper findings." *Lamb v. Kansas Parole Board*, 15 Kan. App. 2d 606, 608, 812 P.2d 761 (1991).

Hartfield does not allege that the Board misinterpreted anything. When Hartfield came before the Board it was aware of his earliest parole eligibility date and opted to pass him for three years. There is nothing in the record regarding why the Board passed him, which further limits our ability to conclude that had he applied earlier he would have been granted parole. It is mere conjecture that had he appeared before the Board when first eligible in 2017, the Board would have released him on parole or it would have released him sooner than 2019 (the year his petition was filed). Moreover, Hartfield fails to argue on appeal that legal authority exists for either the district court or this court to order his immediate release under these circumstances.

For these reasons, the decision of the district court is affirmed.